OPINION
{¶ 1} Raymond Hairston appeals from his convictions for possessing criminal tools, possession of crack cocaine greater than 25 grams but less than 100 grams and trafficking in crack cocaine less than one gram, after a jury trial.
 {¶ 2} The facts underlying this appeal are set out in the trial court's decision overruling Hairston's suppression motion. They are as follows:
 {¶ 3} "The Dayton Police Department Drug Unit received information on April 26, 2004, that a person by the name of `Joe' at a particular phone number would sell crack cocaine. Detective Rodney Barrett of the Drug Unit called the number. A female answered and Barrett asked for `Joe.' A male then got on the phone and Barrett said he needed a `50' meaning $50.00 of crack cocaine. The voice on the phone said he was in Kettering, Ohio, and a meeting place was set up behind the McDonald's on Smithville Road in Dayton, Ohio. Sergeant Mark Spiers was to be driving a blue Buick and was to meet the Defendant in a maroon Grand Am. At about 10:30 p.m. Spiers was in the parking lot behind the McDonald's and he went to the driver's side of a maroon Grand Am which had been driven into the location by the Defendant. There were three (3) other occupants in the vehicle.
 {¶ 4} "Spiers gave the Defendant (3) $20.00 bills and the Defendant then picked up one (1) of the two (2) baggies of crack cocaine that were on the center console of the vehicle. One of the passengers then warned of police officers closing in. Hairston then dropped the baggie of crack cocaine and also threw the money out of the window with his left hand. The Defendant was then placed under arrest.
 {¶ 5} "After being placed under arrest, the Defendant was `Mirandized' by Officer Barrett. Officer Barrett testified that he advised the Defendant of his Miranda Rights by use of a standardized printed card and that he read each line to the Defendant. There was no direct testimony that the Defendant waived his rights but the Defendant then spoke with Barrett after the Rights were given. The Defendant then made a statement wherein he denied any involvement in a drug transaction, stated he did not have any drugs or didn't throw any drugs, and that said that the officers did not find any drugs on him.
 {¶ 6} "Later, the Defendant was taken to the Montgomery County Jail where he was searched in the Receiving Area by Corrections Officer William Moore. Moore found white-yellowish crumbs of suspected crack cocaine in the pocket of the jacket the Defendant was wearing. Hairston asked `what that was' and Moore said he thought it was crack cocaine. Hairston told Moore that `it was his girlfriend's jacket.' This conversation was initiated by the Defendant.
 {¶ 7} "Approximately three (3) weeks later, while performing routine supervision in the jail, Hairston told Corrections Officer Moore something to the effect that the Defendant knew they were going to dismiss the charges about the drugs. This conversation was initiated by the Defendant." (Decision and Entry Overruling Defendant's Motion to Suppress, Aug. 8, 2004).
 {¶ 8} In his first assignment of error, Hairston contends the trial court erred when it overruled his motion to dismiss on the grounds that the State engaged in a discriminatory prosecution of him.
 {¶ 9} Prior to trial, Hairston alleged in his motion to dismiss that he was the victim of a discriminatory prosecution because although there were four persons present in the vehicle where a large amount of crack cocaine was found, he was the only person charged with the first-degree felony and one individual, Christopher Gibson, was not charged with any criminal offense.
 {¶ 10} The trial court conducted a hearing on the discriminatory prosecution claim on July 20, 2004. Sergeant Mark Spiers of the Dayton Police Department testified that he set up a drug buy with an individual who answered to the name "Big Joe" or "Joe." Spiers agreed to meet this individual at McDonald's Restaurant on Smithville Road and the seller indicated he would be driving a maroon Grand Am vehicle. Spiers said the meeting took place as scheduled and Hairston was driving the Grand Am. Spiers said the drug transaction occurred as earlier described in this opinion. Sergeant Spiers stated the only person he had spoken with who was in the vehicle was Hairston. Spiers was then asked the following on cross-examination:
 {¶ 11} "Q. Well you understand my concern. Mr. Hairston is taking the full brunt of this particular charge to two minor charges and one person is charged with nothing, who was in proximity with a drug weighing incident. You can understand my curiosity of how it ended up being this way.
 {¶ 12} "A. Well, from my observation I've already seen Mr. Hairston possibly engage in two sales prior to this date from that same car. Then the fact that he pulled up, made contact obviously as if we just spoke on the phone took the money, reached for a bag, I would say he's one conducting the drug sales."
 {¶ 13} Spiers testified that Hairston was the only one charged with the first-degree felony because he was the one conducting the sale. Spiers admitted that a digital scale used to measure drugs was found on the floor between the two passengers in the back seat. Mr. Gibson was identified at the hearing as a white male and he was one of the passengers in the back seat. Spiers testified he assumed Gibson was a crack user who ran errands for Hairston.
 {¶ 14} Again Spiers explained why he didn't charge Gibson or the other passenger in the back seat of the Grand Am with possessing criminal tools and why he charged Hairston the way he did:
 {¶ 15} "Q. Now let me make sure I got this correct. Why did you not charge Mr. Gibson or one of the other passengers with possessing criminal tools?
 {¶ 16} "A. I did not see anybody in actual possession of the scales. And we were already charging with trafficking.
 {¶ 17} "Q. Mr. Hairston?
 {¶ 18} "A. Right.
 {¶ 19} "Q. How did you come to the conclusion that Mr. Hairston was the only person involved, I'm still not clear on that?
 {¶ 20} "A. He's the only person involved making the sale to me. He's the one who took the money, he's the one who talked to me when I got out of the car. He's the one who reached for a bag of crack to complete the sell until someone said they're blocking you in. No one else in the car spoke to me. No one else in the car took money from me. No one else in the car did anything except for the defendant." (TR. 53.)
 {¶ 21} In addressing the discriminatory prosecution motion, the trial court also considered the testimony of Detective Barrett who said he arrived just as the drug sale was being made and observed a white female in the front seat and a white male and white female in the back seat of the Grand Am. Barrett said both females had small amounts of crack cocaine on them and they were each charged with possession of crack cocaine less than a gram in amount.
 {¶ 22} In overruling Hairston's motion, the trial court stated as follows:
 {¶ 23} "The second issue before the court is for the motion to dismiss for discriminatory prosecution. The evidence that I heard today and also the evidence that I heard from the witnesses at the prior hearing has only one person identified as the driver of the vehicle. There was a male voice on the phone that was made to set up this buy. That narrows down to only two people perhaps in the car that that voice could have been if it was somebody in that car. At the time of the meeting with Detective Sergeant Spiers the defendant was the one who did the talking. There was no discussion with anyone else. The only one that Detective Spiers saw touching the baggie or one of the two baggies of crack cocaine according to the testimony was the defendant. The only participation that any of those other people had by the evidence was perhaps one of them and it appears to be one of the females saying something to the effect that they're blocking you in. Under those facts and circumstances the court would make a determination and make a finding that the prosecution of this defendant is based on the evidence that the police officers testified to against the defendant. Whether or not a hundred other people are stopped for speeding when one person is stopped for speeding makes no difference. The only circumstance of this case is whether the defendant was in possession of the crack cocaine at the time of the meeting with the police."
 {¶ 24} In order for a selective enforcement or discriminatory prosecution to reach the level of unconstitutional discrimination, the discrimination must be "intentional or purposeful." Snowden v. Hughes (1944), 321 U.S. 1, 8. The Ohio Supreme Court in State v. Flynt (1980), 63 Ohio St.2d 132, found that Larry Flynt had not been the subject of a discriminatory obscenity prosecution and the court cited with approval the concept of intentional discrimination explained inUnited States v. Berrios (C.A. 2, 1974), 501 F.2d 1207, 1211, as follows:
 {¶ 25} "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as `intentional and purposeful discrimination.'"
 {¶ 26} The State concedes that the other car occupants were not charged with the first-degree felony, possession of cocaine (25-100 grams). The record discloses that the two Caucasian females in the Grand Am, Betty Wilder and Katherine Smith were indicted for the fifth-degree felony of possession of less than a gram of crack cocaine. No drugs were found on Gibson and he was not charged.
 {¶ 27} The State argues and we agree that Hairston was the individual who actually sold the drugs to Sergeant Spiers and was the only individual to receive the money and handle the drugs. Also the cell phone number provided by the confidential informant matched the cell phone number in Hairston's possession. We also agree the defendant failed to present any evidence that the State entertained any impermissible motive or animus toward him. The burden is on a defendant to prove a selective prosecution claim because the prosecutor is presumed not to have discriminated.State v. Keene (1998), 81 Ohio St.3d 646. We agree with the State that the defendant failed to prove that he was the victim of purposeful discrimination when the State charged him with the first-degree felony. The first assignment of error is Overruled.
 {¶ 28} In his second assignment, Hairston contends the trial court erred in overruling certain statements he made at the scene of his arrest. Hairston contends his statements should be suppressed because there is no direct evidence that he waived his rights or agreed to speak to the police officer after he was placed under arrest. Hairston points to his statements to Detective Barrett after being Mirandized, "you didn't find any drugs on me. I didn't drop any drugs, I didn't have any drugs on me." We note that the trial court found that Hairston was advised of his Miranda rights and that he waived them by making the statements to Detective Barrett.
 {¶ 29} The State contends that Detective Barrett fully complied with providing the warnings provided in Miranda for in-custody interrogation and that it demonstrated that Hairston made a voluntary, knowing, and intelligent waiver of his Fifth Amendment privilege against self-incrimination. The evidence demonstrates that Detective Barrett provided the Miranda warnings to Hairston and he then made his exculpatory statements to Barrett. The State concedes Miranda applies to exculpatory statements as well as inculpatory statements. Miranda v.Arizona (1966), 384 U.S. 436. Miranda applies to "custodial interrogation." In this case, Hairston volunteered the response that "you didn't find any drugs on me" and that he didn't have any drugs without any questioning by Detective Barrett. Volunteered statements of any kind are not barred by the Fifth Amendment. Miranda, supra, at 478. The appellant's second assignment of error is likewise Overruled.
 {¶ 30} In his third assignment, Hairston argues that his conviction was against the manifest weight of the evidence. The testimony presented at trial was essentially the same as presented at the suppression hearing. In his defense, Hairston presented the testimony of Betty Wilder, who was seated in the front seat of the Grand Am at the time of Hairston's arrest. She testified the drugs recovered from the console of Hairston's vehicle were hers which she purchased with workers' compensation money. The other female passenger in the back seat of the vehicle, Katherine Smith, corroborated Ms. Wilder's testimony and said she was present when Ms. Wilder purchased the drugs. Also, Hairston argues there was no evidence he possessed the digital scale (a criminal tool) because it was found behind the car's console on the back seat floor between the passengers.
 {¶ 31} The State points out that she did not know why Hairston was going to the McDonald's off Smithville Road and she didn't observe any sale between Detective Spiers and Hairston despite being in the front seat of the vehicle at the time of the transaction. The State notes that although Ms. Smith corroborated Ms. Wilder's testimony she refused to admit she had crack cocaine and a crack pipe which the police found on her at the time of her arrest.
 {¶ 32} Hairston argues that the State presented no evidence that he ever offered to sell drugs. The State notes that Detective Spiers called the cell phone number of a man named "Big Joe" who drives a maroon Grand Am who would sell him crack cocaine. Spiers testified Big Joe answered the phone and agreed to meet Spiers at the Pinewood Plaza off Smithville Road to sell him $50 of crack cocaine. Spiers testified he drove to the meeting place and met Hairston who was driving the maroon Grand Am as promised. Spiers then gave $60 to Hairston, who accepted the money and grabbed one of the two bags of crack cocaine which were located in the vehicle's console. It was only after Katherine Smith shouted that they were being blocked in by the police that Hairston dropped the bag of cocaine and the money. We agree the jury could reasonably believe Detective Spiers' testimony and convict Hairston of offering to sell the crack cocaine.
 {¶ 33} There was also convincing evidence that Hairston possessed the two bags of cocaine he proposed to sell to Spiers. Not only did Spiers see Hairston grab one of the bags situated on the vehicle's console but small amounts of crack cocaine were found in Hairston's jacket when he was booked into the County Jail. It was discovered by the police that one of the bags had a small hole in it, so the jury could reasonably infer Hairston had the bag in his jacket before he placed it on the car's console.
 {¶ 34} Lastly, Hairston argues that he did not possess the digital scale. Detective Spiers said the scale was located just behind the car's console and may have fallen off while the vehicle was in motion. It was certainly within easy reach of Hairston who was the person who answered the cell phone and accepted Spiers' proposal to purchase the crack cocaine.
 {¶ 35} Our task in addressing a manifest weight assignment is to review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "lost its way" and created a manifest miscarriage of justice. State v. Thompkins (1997),78 Ohio St.3d 380. There is no evidence that occurred in this matter. The third assignment of error is Overruled.
 {¶ 36} In his last assignment, Hairston contends his trial counsel was constitutionally ineffective because he should have raised the issue of his "competency" to stand trial.
 {¶ 37} At Hairston's sentencing, he told the court that he repeatedly told his trial counsel that he was receiving social security benefits for mental incompetency. Hairston's sister spoke at the sentencing and asked that the trial court consider her brother's mental health in imposing sentence. The trial court indicated it reviewed Hairston's extensive criminal history and his mental health "issues" in imposing sentence.
 {¶ 38} Hairston argues that he is bipolar, manic-depressive, and schizophrenic. An accused is competent to stand trial if he understands the nature and objective of the criminal proceedings and can assist counsel in his own defense. R.C. 2943.37(G). Also, R.C. 2945.37(F) provides that a defendant shall not be found incompetent simply because he is mentally ill or because he is receiving psychotropic drugs. Mental illness in short does not equate with legal incompetence. State v. Berry (1995),72 Ohio St.3d 354. A trial court must conduct a competency hearing where there are sufficient indicia of incompetency to call into question the defendant's competency to stand trial. State v.Berry, supra.
 {¶ 39} There is no indication in this record that Hairston's counsel had any difficulty communicating with him or that Hairston could not assist in his own defense because of a mental illness. Hairston did not testify at the suppression motion nor at the trial so that the record fails to disclose any suggestion of defendant's incompetency. Therefore the record fails to demonstrate that Hairston's trial counsel was constitutionally ineffective for not requesting that Hairston be examined for his competency to stand trial.
 {¶ 40} Hairston also contends his trial counsel was ineffective for not having the bag of cocaine and the buy money tested for fingerprints. He contends that if his fingerprints were not found on these items he could not have been convicted. We disagree. Fingerprint evidence is not necessary when the police personally observe the defendant's criminal conduct. The appellant's fourth assignment of error is Overruled.
 {¶ 41} Appellant contends that the transcript of the suppression hearing filed by his appellate counsel is not accurate in that the face sheet provided by the transcriber, Amy Sims, refers to Judge Wagner and Judge Petzold as presiding over the pre-trial hearings and trial. Hairston has provided this court with a transcript of videotaped proceedings of the July 2, 2004 and July 20, 2004 proceedings, which have been transcribed by Theresa Conley, Court Reporter. The court reporter accurately reflects that those motion hearings were presided over by Judge Michael T. Hall. It is also evident that the court reporter did not have as much difficulty "discerning" the videotape testimony and thus we consider the court reporter's rendition of the motion hearings as the official record and it will be filed of record.
 {¶ 42} The Judgment of the trial court is Affirmed.
Wolff, J., and Fain, J., concur.