OPINION
{¶ 1} Defendant-appellant, Nicole Sanders, appeals her conviction and sentence in the Butler County Court of Common Pleas for patient abuse and assault following a jury trial. We affirm appellant's conviction and sentence.
 {¶ 2} In February 2003, appellant was indicted on one count each of patient abuse in violation of R.C. 2903.34(A)(1), a fourth-degree felony, and assault in violation of R.C. 2903.13-(A), a first-degree misdemeanor. The charges stemmed from an incident that occurred on November 30, 2002 wherein appellant allegedly struck Terry G. several times in the groin area with a cordless phone. At the time of the incident, Terry was a 56-year-old mentally handicapped resident with limited communication skills at the Fairfield Center, a facility operated by the Butler County Department of Mental Retardation. Terry was completely dependent on the staff at the center for all of his day-to-day needs. At trial, two conflicting versions of the incident were presented.
 {¶ 3} The state of Ohio presented the testimony of Tara Sparks and April Gallaher. On November 30, 2002, appellant, Tara, and April were resident specialists on duty at the center. A resident specialist provides day-to-day direct care to residents of the center. Appellant, Tara, and April had been employed at the center six months, six weeks, and 11 months respectively. That day, Tara was working from 3 to 11 p.m. and was responsible for the care of four residents, including Terry who was on a family outing. When Terry returned to the center at about 4 p.m., he was happy and in a good mood. Tara took him to the TV room to watch television until dinner time at 5 p.m. Tara then went to the nearby manager's office to look over her list of duties for the day. April was already in the office.
 {¶ 4} Moments later, Tara and April heard Terry crying and yelling "stop, quit, you're fired." Tara and April immediately went to the TV room where they observed Terry sitting on a couch and appellant standing over him with a cordless phone in her hand. Appellant looked at Tara and April, told them Terry was acting up, and then hit Terry four or five times in the groin with the phone. Shocked, Tara and April did not react. Because Terry continued to cry, appellant told him to "shut up." As Terry then began to kick at her, appellant grabbed him by his ankles and pulled him off the couch onto his back. During the entire incident, Terry kept crying and telling appellant to stop and that she was fired. Tara and April helped Terry back on the couch, asked him if he was o.k., and went back to the office. When they left the TV room, appellant was still in the room with Terry.
 {¶ 5} About 15 minutes later, Tara and April again heard Terry crying. They found him in the hall lying on the floor face down. Appellant, who was standing over Terry, explained that after Terry once again started to act up, she was taking him to his room when he slid off his walker and fell to the ground. Another resident specialist, Brad, helped Terry get back to his feet. Appellant called the nurse and got some ice to put on Terry's eye. When the nurse checked Terry, he had a slight bruise to his left eye. Terry ended up having a black eye.
 {¶ 6} Although required by protocol to immediately notify a supervisor and file a report upon witnessing an assault on a resident, Tara and April failed to either notify a supervisor or prepare a report that day regarding the phone incident. Likewise, they did not tell the nurse about the phone incident that day. They did, however, tell their QMRP (qualified mental retardation professional) and prepare a report about the phone incident two days later when they returned to work. The nurse was then notified about the phone incident. Upon examining Terry's body, the nurse noted a "1/2 cm round red area in the [right] groin area" as well as a "1/2 cm bruise on the inner [left] thigh."
 {¶ 7} Appellant testified on her behalf. On November 30, 2002, she was working from 7 a.m. to about 9 p.m., and had been working 21 hours in the past two days. That day, she was responsible for the care of two residents, Kevin C. and David P. Because David had a tendency to bite staff and other residents, he had to be kept in visual sight by a staff member at all times. According to appellant, she was walking David into the TV room when Terry got off the couch and approached them. This caused David to snap and get ready to bite Terry. Appellant intervened, stepping between Terry and David and redirecting David.
 {¶ 8} While appellant was busy with David, Terry walked out of the room into the hallway. Moments later, appellant heard Terry screaming. She found him lying on the floor face down next to his walker and complaining about his eye hurting. Appellant called the nurse with a cordless phone. The nurse quickly responded. Appellant told her what had happened, and then got some ice for Terry's eye. After she returned with the ice, appellant was talking to Terry telling him everything would be okay when he began kicking at her. Although she had the cordless phone in her hand, appellant denied hitting him with it. Instead, she implemented what she had learned in training to prevent herself from being injured. Eventually, Terry calmed down, stopped kicking, apologized, and hugged appellant. That day, appellant filed a report regarding Terry's fall in the hallway.
 {¶ 9} Appellant worked the rest of her shift that day without incident and worked a double shift the following day. Although off the next day, she was called into work because of Tara's and April's allegations. Initially, when confronted about what had happened, appellant thought it was because of Terry's eye incident. Likewise, when interviewed by the police about a week later, appellant again thought it was about the eye incident. When asked about the phone incident during the police interview, appellant denied the allegation and continued to focus on the eye incident.
 {¶ 10} On September 5, 2003, a jury found appellant guilty as charged. Several days later, appellant filed a Crim.R. 29(C) motion for acquittal which the trial court denied. The trial court subsequently sentenced appellant to six months in prison on the patient abuse count (the minimum prison term for a fourth-degree felony), and to a concurrent three-month jail term on the assault count. This appeal follows in which appellant raises three assignments of error.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "The trial court erred to the prejudice of defendant-appellant when it sentenced her to prison instead of putting her on community control."
 {¶ 13} R.C. 2929.13(B) governs the sentencing of an offender who, like appellant, is convicted of a fourth-degree felony. The statute does not create a presumption that an offender who commits a fourth-degree felony should be sentenced to community control instead of prison. Rather, the statute gives general guidance and a disposition against imprisonment for such offenders. See State v. Carr (Jan. 31, 2000), Butler App. No. CA99-02-034.
 {¶ 14} Under R.C. 2929.13(B), the trial court is first required to determine whether any of the factors enumerated in R.C. 2929.13(B)(1) are applicable. If the court finds that at least one of the factors is applicable, the court then reviews whether a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11. See R.C.2929.13(B)(2)(a). In doing so, the court is guided by the pertinent seriousness and recidivism factors set forth in R.C.2929.12. State v. Beckman, Butler App. No. CA2003-02-033, 2003-Ohio-5003, ¶ 11. If the trial court finds after this review that the offender is not amenable to community control, and that a prison term is consistent with R.C. 2929.11 purposes and principles of felony sentencing, then the court is required to impose a prison term. R.C. 2929.13(B)(2)(a).
 {¶ 15} In its sentencing entry and at the sentencing hearing, the trial court found that two of the factors in R.C.2929.13(B)(1) were applicable, to wit, appellant caused physical harm to Terry, and appellant held a public office or a position of trust and the offense related to that office or position. R.C.2929.13(B)(1)(a) and (d). Upon weighing the recidivism and seriousness factors set forth in R.C. 2929.12, the trial court specifically stated both in the sentencing entry and at the sentencing hearing that appellant was not amenable to community control and that a prison term was consistent with R.C. 2929.11
purposes and principles of felony sentencing. Specifically, with regard to recidivism, the trial court found that by refusing to acknowledge the offense, appellant showed no remorse.
 {¶ 16} With regard to seriousness, the trial court found that (1) the injury to the victim was worsened by the mental condition of the victim, (2) the "victim suffered serious physical, psychological or economic harm as a result of the offense," (3) appellant "held a public office or position of trust and the offense was related to that office or position," (4) appellant's occupation or position obliged her to prevent the offense or is likely to influence future conduct of others, and (5) appellant's occupation facilitated the offense. On appeal, appellant takes issue with the court's findings that Terry suffered serious physical harm, and that appellant held a position of trust.
 {¶ 17} After noting that Terry was a "mentally retarded" person "who really couldn't do much or express much for himself," the trial court found that he had suffered "serious physical, psychological or economical harm as a result of the offense. And this certainly could be argued as to what he suffered * * * because he is so unable to speak for himself. He's really unable to articulate what the injury was, but I make that finding." While we agree with appellant that the injuries suffered by Terry as described by the nurse do not fit the definition of "serious physical harm" under R.C. 2901.01(A)(5), the trial court did not err in making such finding. The record shows that Terry, a mentally handicapped patient with limited communication skills, yelled out and cried while being struck several times in the groin. In addition, the striking was done by a caregiver whose job is to provide day-to-day direct care to patients.
 {¶ 18} With regard to the trial court's finding that appellant held a position of trust, we find that the record supports the finding. Terry was a mentally handicapped patient with limited communication skills who resided in the center where appellant was employed as a caregiver. Appellant worked for a facility that was supposed to provide care, comfort, and security to Terry. Appellant's position as a caregiver at the center, regardless of whether Terry was her patient that day, therefore placed her in a position of trust. See State v. Lehman,
Fairfield App. No. 01CA12, 2001-Ohio-7030, and State v.Sturbaum, Portage App. No. 2001-P-0056, 2002-Ohio-3131.
 {¶ 19} After reviewing the record before us, we find that the trial court did not err by sentencing appellant to prison rather than community control. Appellant's first assignment of error is overruled.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "The trial court erred to the prejudice of defendant-appellant when it did not grant a mistrial, or in the alternative, when it refused to instruct the jury regarding its inability to reach a just conclusion."
 {¶ 22} Two hours into their deliberations, the jury sent a note to the trial court asking for the testimony of appellant, Tara, and April. The trial court considered replaying these witnesses' testimony, but upon defense objection, simply decided to instruct the jury to rely on its collective memory. Later in the deliberations, the jury asked the trial court, "what is the procedure if we are deadlocked?" After discussing the issue with both counsel for about 20 minutes, the trial court decided to give an Allen charge[1] to the jury. Defense counsel objected to the Allen charge and moved for a mistrial. The trial court overruled the motion for a mistrial.
 {¶ 23} Before the trial court could give the Allen charge, however, the jury asked for an additional ten minutes to deliberate, stating "we think we are close." Defense counsel again moved for a mistrial which the trial court denied. After a "brief recess," the foreperson addressed the trial court, stating "we have made some progress. Our request to review the transcripts is an integral part of a decision-making process at this point. And without those, we may, in fact, not be able to come to a conclusion." At that point, the trial court gave theAllen charge. After the jury resumed deliberations, defense counsel once again moved for a mistrial, which was denied by the trial court. At 8:15 p.m., the jury returned guilty verdicts. The record shows that the jury deliberated for about five hours.
 {¶ 24} On appeal, appellant argues that the trial court abused its discretion when it gave the Allen charge, refused to declare a mistrial, and failed to issue a supplemental instruction taken from State v. Martens (1993),90 Ohio App.3d 338. The Martens charge is reflected in 4 Ohio Jury Instructions (2000), Section 415.50(4) and discusses the impossibility of reaching a verdict. We note that defense counsel never asked the trial court to give the Martens charge. Appellant contends that given the fact that the jury could neither recall the details of the testimony nor resolve the issues after an additional ten minutes following several hours of deliberations, reading the Allen charge to the jury clearly resulted in a coerced verdict.
 {¶ 25} The grant or denial of an order of mistrial lies within the sound discretion of the trial court. State v.Garner, 74 Ohio St.3d 49, 59, 1995-Ohio-168. Likewise, an appellate court will not reverse the judgment of a trial court based on the content of a jury instruction absent an abuse of discretion. Burke v. Schaffner (1996), 114 Ohio App.3d 655.
 {¶ 26} In State v. Howard (1989), 42 Ohio St.3d 18, the Ohio Supreme Court rejected the Allen charge for Ohio and instead approved a supplemental charge to be given to juries deadlocked on the question of conviction or acquittal. TheHoward charge is not an absolute mandate for trial courts to follow, but rather a suggestion. See State v. Barrett, Scioto App. No. 03CA2889, 2004-Ohio-2064. If a trial court deviates from the Howard language, the charge must nevertheless comport with the goals of Howard, namely, (1) encourage a unanimous verdict only when one can conscientiously be reached, leaving open the possibility of a hung jury and resulting mistrial, and (2) call for all jurors to reevaluate their opinions, not just the jurors in the minority. Id.
 {¶ 27} Upon reviewing the Allen charge issued by the trial court, we find that it is balanced and neutral, and that it comports with the goals of Howard. The trial court encouraged the jurors to reach a unanimous verdict and left open the possibility that such a verdict might not be reached. The court did not single out the jurors in the minority, but rather asked all jurors to consult with each other. The court did not instruct the jury to reach a verdict at any cost. Instead, the court stressed the importance and desirability of reaching a verdict.
 {¶ 28} Whether a jury is irreconcilably deadlocked is essentially a discretionary determination for the trial court to make. State v. Brown, 100 Ohio App.3d 51, 2003-Ohio-5059, ¶ 37. There is no bright-line test to determine what constitutes an irreconcilably deadlocked jury. Id. A Martens charge "is appropriately given when it appears to the court that the jury, after deliberating for a reasonable period of time, is unable to reach a verdict. * * * If given prematurely, the instruction may be contrary to the goal of the Howard charge of encouraging a verdict where one can be consciously reached." Martens,90 Ohio App.3d at 343.
 {¶ 29} In the case at bar, while the jury deliberated for several hours, we are unwilling to find that the trial court abused its discretion by choosing to give the Allen charge rather than giving the Martens charge or declaring a mistrial. The jury never advised the trial court that reaching a verdict in this matter was impossible. Indeed, before the trial court could initially give them the Allen charge, the jury asked for ten more minutes to deliberate. Even the foreperson merely indicated that they "may not be able to come to a conclusion." After hearing the Allen charge, the jury never informed the court that they continued to be deadlocked. Based upon the record before us, we cannot say that the Allen charge coerced the jury into reaching a verdict. We therefore find that the trial court did not err by giving the Allen charge to the jury, and failing to give the Martens charge or declare a mistrial. Appellant's second assignment of error is overruled.
 {¶ 30} Assignment of Error No. 3:
 {¶ 31} "The trial court erred to the prejudice of defendant-appellant when it overruled her [Crim.R. 29(C)] motion for a judgment of acquittal."
 {¶ 32} Crim.R. 29(C) allows a trial court, upon motion, to set aside a guilty verdict and enter a judgment of acquittal. The trial court applies the same standard in ruling on motions for acquittal presented either at trial or made after judgment.State v. Miley (1996), 114 Ohio App.3d 738, 742. Therefore, a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261, syllabus.[2]
 {¶ 33} Appellant argues that considering the length of the jury deliberations, their indication it was deadlocked, their apparent difficulty in recalling the uncomplicated testimony of appellant, Tara, and April after a two-day trial, despite being able to take notes, their coerced verdict as a result of theAllen charge, and the fact that "the overwhelming evidence points to an acquittal," appellant's conviction was clearly questionable and the trial court should have granted her motion for acquittal.
 {¶ 34} Appellant was convicted of violating R.C. 2903.13(A) which states that "[n]o person shall knowingly cause or attempt to cause physical harm to another," and R.C. 2903.34(A)(1) which states that "[n]o person * * * who is an agent or employee of a care facility shall * * * commit abuse against a resident or patient of the facility." Upon thoroughly reviewing the record, and incorporating our resolution of appellant's second assignment of error under this assignment of error, we find that the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the offenses of patient abuse and assault has been proved beyond a reasonable doubt. The trial court, therefore, did not err by denying appellant's Crim.R. 29(C) motion. Appellant's third assignment of error is overruled.
 {¶ 35} Judgment affirmed.
Powell and Valen, JJ., concur.
[1] The Allen charge was approved by the United States Supreme Court in Allen v. United States (1896), 164 U.S. 492,17 S.Ct. 154, for use with a deadlocked jury.
[2] We decline to apply the standard used in State v. Norwood
(M.C. 1977), 55 Ohio Misc. 19. In that case, the court granted a Crim.R. 29(C) motion for acquittal after the jury failed to reach a verdict. The standard employed by the Norwood court was one of "judicial discretion, taking into consideration all matters transpiring during the course of the trial and any other factors which may have influenced the jury in their inability to reach a verdict and the probability that other juries considering the case will be also of honest divided opinions." Norwood is distinguishable from the case at bar, of course, in that the instant jury reached a verdict before the motion was made. SeeState v. McMahan (Jan. 12, 1983), Hamilton App. No. C-810728.