OPINION
{¶ 1} Defendant-appellant, Jumal L. Edwards, appeals his conviction and sentence in the Trumbull County Court of Common Pleas for Receiving Stolen Property. For the following reasons, we affirm Edwards' conviction, reverse the sentence imposed, and remand this case for resentencing in accordance with State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856.
 {¶ 2} On June 6, 2005, Edwards was indicted by the grand jury on one count of Receiving Stolen Property, a felony of the fourth degree in violation of R.C. 2913.51(A) and (C). Edwards entered a plea of not guilty and the matter proceeded to trial between January 9 and 12, 2006.
 {¶ 3} The following events were testified to at trial. On the morning of February 19, 2005, Doctor Khalid Iqbal visited rental property he owned at 3032 Northgate Avenue in Trumbull County to bring breakfast for workers replacing roof shingles. Dr. Iqbal stopped his vehicle, a 1998 Cadillac, in the driveway in front of the duplex. Dr. Iqbal testified that it was a very cold day and that nobody was in sight. Dr. Iqbal left the automobile running while he went inside one of the units, which was empty, and left the breakfast for the workmen. When Dr. Iqbal returned he saw his Cadillac being driven away quickly, southbound on Northgate. Dr. Iqbal testified that there were check books, documents relating to the rental properties, and patient records in the Cadillac.
 {¶ 4} Dr. Iqbal called the police. Patrolman Peter DeAngelo of the Liberty Police Department responded. After speaking with Dr. Iqbal, Patrolman DeAngelo spoke with Jacinda Bowers, who rented one of the units in the duplex. Bowers told DeAngelo that she had left the duplex that morning, at about 7:30 a.m., to go to work. Bowers also told DeAngelo that Edwards had been in the duplex when she left that morning, but was not there when she returned, sometime after noon. Suspecting that Edwards had taken the vehicle, DeAngelo asked Bowers if she could contact Edwards and encourage him to return it.
 {¶ 5} Bowers contacted Edwards and told him the police were looking for the Cadillac. Bowers told Edwards that the vehicle belonged to a doctor and that if he returned it, charges would not be pressed. Edwards denied that he had the vehicle. Bowers contacted one of Edwards' friends who told her the vehicle might be found around the Boston Avenue area of Youngstown.
 {¶ 6} Bowers related this information to Patrolman DeAngelo who drove to Youngstown that day to look for the vehicle, but did not find it.
 {¶ 7} As part of their investigation, Liberty Police contacted Edwards' aunt, Darlene Edwards. Darlene testified at trial that she had seen Edwards driving a Cadillac sometime after being contacted by the police, but did not report this fact to the police.
 {¶ 8} On February 22, 2005, Patrolman DeAngelo returned to Youngstown to look for Dr. Iqbal's vehicle. After speaking further with Bowers, DeAngelo believed that the vehicle might be located in the area around the Rockford Village Apartments on Victor Avenue. DeAngelo had brought with him a computer printout of Edwards' driver's license photograph.
 {¶ 9} Patrolman DeAngelo noticed Dr. Iqbal's Cadillac, confirmed by the front license plate, driving toward him. DeAngelo testified that both cars were driving slowly and passed within four feet of each other. As the cars passed, DeAngelo made eye contact with the driver of the Cadillac whom he recognized as Edwards from the license photo.
 {¶ 10} The Cadillac drove into Rockford Village Apartments, which has a cul-de-sac driveway, and Patrolman DeAngelo parked his police cruiser at the entrance/exit to the apartments. DeAngelo then contacted Youngstown police for backup. While waiting for the Youngstown police to arrive, DeAngelo saw the Cadillac approach the entrance/exit to the apartments. DeAngelo testified that he again saw Edwards operating the vehicle. DeAngelo saw Edwards looking at his police cruiser, then put the Cadillac into reverse and re-entered the apartments. At this point, DeAngelo lost sight of the Cadillac.
 {¶ 11} When Youngstown police arrived at the scene, Patrolman DeAngelo entered the apartment complex and found the Cadillac abandoned. The keys were recovered from underneath another car in the parking lot. Dr. Iqbal testified that all his property was still in the car, except for a few missing checks. Edwards was eventually arrested and charged as indicated above. At the time of his arrest, Edwards is said to have remarked that "this is bullshit and that his P.O. said the doctor said he wasn't going to pursue charges on it."
 {¶ 12} The jury found Edwards guilty of one count of Receiving Stolen Property. A sentencing hearing was held on February 6, 2006, at which Edwards was sentenced to serve and eighteen-month prison term, the maximum allowable prison sentence for a fourth degree felony. R.C.2929.14(A)(4).
 {¶ 13} Edwards timely appeals and raises the following assignments of error:
 {¶ 14} "[1.] The trial court erred and abused its discretion by allowing testimony from a witness who was not on the witness list provided by the state during discovery.
 {¶ 15} "[2.] The trial court erred when it instructed the jury with the Howard charge, but neglected to read the third paragraph thus misleading the jury into reaching a verdict to the prejudice of appellant.
 {¶ 16} "[3.] The trial court erred by imposing the maximum sentence upon appellant, pursuant to R.C. 2929.14(B) (C), in violation of his Sixth Amendment right to a jury trial.
 {¶ 17} "[4.] The appellant's convictions are against the manifest weight of the evidence."
 {¶ 18} Edwards' first assignment of error challenges the trial court's decision to allow Edwards' aunt, Darlene Edwards, to testify at trial. Darlene was not identified to defense counsel as a potential witness prior to trial as required by the Rules of Criminal Procedure. Crim.R. 16(B)(1)(e) ("[u]pon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial").
 {¶ 19} The prosecution was not aware of the existence of Darlene as a potential witness until the second day of trial, after the jury had been selected, but before opening statements. Darlene accompanied Bowers, who had been identified as a state witness, to court and offered to testify on her own initiative. The prosecution sought leave to allow her to testify and defense counsel objected. A hearing between opposing counsel was held in chambers. The trial judge ruled that Darlene could testify, but granted defense counsel the following options: "I will allow you the right to talk with her and get any information you want from her before she takes the stand. I will allow you to cross examine her and reserve the right to do an additional cross examination. Also, I will allow you the right not to do any cross examination until the next day if that has some impact as to the approach you would take in cross examining that individual." Defense counsel chose to interview Darlene prior to her taking the stand.
 {¶ 20} When confronted with a violation of the discovery rules, the trial court "may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(E)(3); State v.Ballentine (Nov. 29, 1996), 11th Dist. No. 95-L-076, 1996 Ohio App. LEXIS 5421, at *6 ("the trial court has discretion in fashioning a remedy to suit the particular case before it"). Moreover, the trial court "must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, paragraph two of the syllabus.
 {¶ 21} In situations where the prosecution fails to disclose a witness prior to trial, the Ohio Supreme Court has held "the testimony of the undisclosed witness can be admitted if it can be shown that the failure to provide discovery was not willful, foreknowledge of the statement would not have benefited the defendant in the preparation of the defense, and the defendant was not prejudiced by the admission of the evidence." State v. Heinish (1990), 50 Ohio St.3d 231, 236, citingState v. Parson (1983), 6 Ohio St.3d 442, 445-446.
 {¶ 22} Edwards does not allege that the prosecution's violation of the discovery rule was willful, but asserts that Darlene's testimony was crucial to the State's case and unfairly prejudicial. We disagree.
 {¶ 23} Darlene's testimony was not essential to the case against Edwards, as the prosecution took the case to trial without the knowledge or intention of using Darlene as a witness.
 {¶ 24} The substance of Darlene's testimony was not particularly damaging. Darlene testified that she had seen Edwards driving a four-door Cadillac, but could neither recall when she had seen him nor the vehicle's year, color, or license plate number. Moreover, defense counsel effectively cross-examined Darlene as to her motives for testifying against her nephew. Darlene's own son had been murdered by gunfire in Youngstown. When asked by defense counsel if she blamed Edwards for her son's murder, Darlene became very agitated and refused to answer defense counsel's questions.
 {¶ 25} Edwards claims that Darlene's testimony was essential to establish venue for prosecution in Trumbull County, since Patrolman DeAngelo only witnessed Edwards driving the vehicle in Mahoning County. As the trial court correctly noted in its instructions to the jury, however, Edwards could be "tried in any jurisdiction from which or into which the property was taken or received. If you find * * * that the property was taken from Trumbull County, then venue is proven and the offender may be tried in Trumbull County, regardless of where he is found with the property." Cf. R.C. 2901.12(C) ("[w]hen the offense involved the unlawful * * * receiving of property * * *, the offender may be tried in any jurisdiction from which or into which the property * * * was * * * received"). Thus, Darlene's testimony was not essential to establish venue.
 {¶ 26} Finally, the trial court provided defense counsel with various options for curing any potential prejudice. Defense counsel did not seek to recall Darlene to the stand and did not request additional time to investigate her claims.
 {¶ 27} Under the circumstances of this case, we find that the State's violation of the discovery rule was not willful and that Darlene's testimony was not unfairly prejudicial to Edwards' defense. The first assignment of error is without merit.
 {¶ 28} Edwards' second assignment of error involves the "Howard charge" given the jury by the court. Approximately five and a half hours after beginning its deliberations, the jury submitted the following question to the court: "What do we do when one juror is not willing to discuss the case any further? And we cannot come to a unanimous decision."
 {¶ 29} Thereupon, the court read the following charge to the jury, known as a "Howard charge," closely tracking the language approved in the Ohio Supreme Court's decision of State v. Howard (1989),42 Ohio St.3d 18, paragraph two of the syllabus: "This is a new and difficult assignment for you. The process of discussion and deliberation in the jury room is necessarily slow and requires consideration and patience. The secrecy which surrounds your efforts prevents others, including the court, from knowing when your efforts will result in a verdict."
 {¶ 30} "In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of other jurors, each question submitted to you should be examined with proper regard and deference to the opinions of others. It is desirable that the case be decided. You are selected in the same manner, and from the same course, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's opinions with a disposition to be persuaded."
 {¶ 31} "Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors. Go back and deliberate."
 {¶ 32} Edwards' objection to the instruction as given is that it is incomplete. Edwards claims the trial court failed to include the appropriate instruction when a verdict is impossible. This instruction, contained in Ohio Jury Instructions, is as follows: "It is conceivable that after a reasonable length of time honest differences of opinion on the evidence may prevent an agreement upon a verdict. When that condition exists you may consider whether further deliberations will serve a useful purpose. If you decide that you cannot agree and that further deliberations will not serve a useful purpose you may ask to be returned to the courtroom and report that fact to the court. If there is a possibility of reaching a verdict you should continue your deliberations." 4 Ohio Jury Instructions (2006), Section 415.50(3). This supplemental instruction is also known as the "Martens charge," after the case of State v. Martens (1993), 90 Ohio App.3d 338.
 {¶ 33} According to Edwards, although it was proper for the jury to be instructed that reaching a verdict is preferable, the jury should also have been informed that, "if they were hopelessly deadlocked, they did not have to reach a verdict." In other words, Edwards claims the trial court erred by not giving the Martens charge.
 {¶ 34} "[T]he Howard charge is intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus." State v. Robb, 88 Ohio St.3d 59, 81, 2000-Ohio-275. The Martens charge, on the other hand, "is appropriately given when it appears to the court that the jury, after deliberating for a reasonable period of time, is unable to reach a verdict." Martens,90 Ohio App.3d at 343. The courts have recognized, moreover, that if the Martens charge is given prematurely, i.e. before the jury is irreconcilably deadlocked, "the instruction may be contrary to the goal of the Howard charge of encouraging a verdict where one can conscientiously be reached."State v. Brown, 100 Ohio St.3d 51, 2003-Ohio-5059, at ¶ 38, citingMartens, 90 Ohio App.3d at 343; accord State v. Townsend, 8th Dist. No. 87521, 2006-Ohio-5457, at ¶ 33; State v. Sanders, 12th Dist. No. CA2003-12-311, 2004-Ohio-6320, at ¶ 28.
 {¶ 35} "Whether the jury is irreconcilably deadlocked is essentially 'a necessarily discretionary determination' for the trial court to make." Brown, 2003-Ohio-5059, at ¶ 37, citing Arizona v. Washington
(1978), 434 U.S. 497, 510. There is no "bright-line test" for determining when a jury is so deadlocked; the decision in each case must be based on the circumstances of that case. Id.
 {¶ 36} In the present case, the trial court did not abuse its discretion by only giving the Howard charge. The jury was not irreconcilably deadlocked; rather, deliberations had been stalled because one juror refused to discuss the case further. There was no indication that a unanimous verdict would have been impossible regardless of further deliberation. Nor had the jury been deliberating for an excessive period of time. The Howard charge was appropriate in these circumstances as it directed all the jurors to reevaluate their positions while encouraging them "to reach a unanimous decision if each juror can conscientiously agree to a verdict." Howard,42 Ohio St.3d at 24.
 {¶ 37} Moreover, it would have been premature to give the Martens charge as urged by Edwards. In chambers, the trial judge informed defense counsel that he would read the Martens charge "if and when" the jury comes back and says "that they are hopelessly deadlocked and they can't reach a decision." Several courts of appeals have approved this procedure whereby a trial judge first gives the Howard charge, and reserves the delivery of the Martens charge until the jury gives further indication of irreconcilable deadlock. Townsend, 2006-Ohio-5457, at ¶ 33; Sanders, 2004-Ohio-6320, at ¶ 29; State v. Washington (1998),126 Ohio App.3d 264, 283; cf. Martens, 90 Ohio App.3d at 343 (rejecting the argument that a Martens charge must be given merely because it is presented in the Ohio Jury Instructions alongside the Howard charge).
 {¶ 38} For the foregoing reasons, Edwards' second assignment is without merit.
 {¶ 39} We next consider Edwards' fourth assignment of error, wherein Edwards argues that his conviction is against the manifest weight of the evidence.
 {¶ 40} A challenge to the manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. "The weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, at syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a 'thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony."Thompkins, 78 Ohio St.3d at 387, citing Tibbs v. Florida (1982),457 U.S. 31, 42. "The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook, J., concurring opinion).
 {¶ 41} In order to convict Edwards of Receiving Stolen Property, the State was required to prove, beyond a reasonable doubt, that Edwards did "receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property ha[d] been obtained through commission of a theft offense." R.C. 2913.51(A).
 {¶ 42} Edwards maintains that the State has failed to meet its burden of proof that he was the person operating Dr. Iqbal's vehicle. Edwards first attacks the testimony of Darlene, pointing out that she could not identify the Cadillac Edwards was operating as Dr. Iqbal's and that she had a possible motive for testifying against Edwards. We acknowledge these problems with Darlene's testimony. However, her testimony was not essential to proving the State's case. Were we to find Darlene's testimony completely discreditable, Edwards' conviction would nevertheless stand.
 {¶ 43} Edwards next argues that Patrolman DeAngelo's identification of him is unreliable, since DeAngelo only knew what Edwards looked like from his drivers' license picture, which was not introduced into evidence. This argument is unconvincing and misconstrues the trial testimony. DeAngelo's suspicions at Rockford Village were not raised because he recognized Edwards, but because he recognized Dr. Iqbal's vehicle. DeAngelo only realized that Edwards was operating the Cadillac when it passed within four feet of DeAngelo's police cruiser moving at a slow rate of speed. Moreover, DeAngelo had a second opportunity to view the driver of the Cadillac when the driver tried to leave the apartment complex.
 {¶ 44} The crucial identification was not Patrolman DeAngelo's recognition of Edwards as the man in the drivers' license picture, but DeAngelo's in court identification of Edwards as the man he had seen operating the Cadillac in Rockford Village.
 {¶ 45} Finally, Edwards argues that the police could have fingerprinted the vehicle to confirm Edwards as the driver. The lack of fingerprint evidence hardly renders the jury's verdict a "miscarriage of justice." "Fingerprint evidence is not necessary when the police personally observe the defendant's criminal conduct." State v.Hairston, 2nd Dist. No. 20751, 2006-Ohio-2656, at ¶ 40.
 {¶ 46} Having considered the arguments and reviewed the evidence, we conclude that Edwards' conviction is not against the manifest weight of the evidence. The fourth assignment of error is without merit.
 {¶ 47} Under the third assignment of error, Edwards maintains, and the State concedes, that the trial court's imposition of the maximum prison sentence for a fourth-degree felony, based on factual findings not reflected in the jury verdict or admitted by him, violates his Sixth Amendment right to trial by jury. See Blakely v. Washington (2004),542 U.S. 296, 303.
 {¶ 48} In imposing the maximum sentence, the trial court found, in accordance with R.C. 2929.14(B) and (C), that Edwards presents "the greatest likelihood of recidivism" and that "the minimum sentence would demean the seriousness of the offense and not adequately protect the public." In Foster, the Ohio Supreme Court held that R.C. 2929.14(B) and (C), "requir[ing] judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, * * * [are] unconstitutional." 2006-Ohio-856, at paragraph one of the syllabus. Sentences exceeding the statutory minimum and/or imposing the statutory maximum, based on these unconstitutional provisions, are void. Id. at ¶ 103.
 {¶ 49} The Supreme Court further held that R.C. 2929.13(B) and (C) are severable from R.C. Chapter 2929, governing felony sentencing. Id. at paragraph two of the syllabus. "After the severance, judicial factfinding is not required before a prison term can be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant." Id. The proper course for an appellate court to follow in this situation "is to vacate that sentence and remand to the trial court for a new sentencing hearing." Id. at ¶ 103. Accordingly, Edwards is entitled to a new sentencing hearing for his Receiving Stolen Property conviction.
 {¶ 50} On remand, the trial court will "have full discretion to impose a prison sentence within the statutory range and [is] no longer required to make findings or give [its] reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100. Moreover, Edwards "may stipulate to the sentencing court acting on the record before it" as well as arguing for a reduction in his sentence. The State may argue that the penalty previously imposed be re-imposed. Id. at ¶ 105.
 {¶ 51} Edwards' conviction for Receiving Stolen Property in the Trumbull County Court of Common Pleas is affirmed. For the reasons set forth under the third assignment of error, we reverse the Judgment Entry of Sentence and remand for proceedings in light of the "remedial severance and interpretation of Ohio's felony sentencing statutes," as explained in Foster. Id. at ¶ 107.