[Cite as *State v. Garrett*, 2019-Ohio-2672.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2018-03-048 |
| Appellee, | : | EN BANC O P I N I O N |
| | : | 7/1/2019 |
| - vs - | : | |
| | : | |
| LATISHA H. GARRETT, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2017-11-1863


Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, OH 45011, for appellee

Scott N. Blauvelt, 315 South Monument Avenue, Hamilton, OH 45011, for appellant


**EN BANC.**

{¶ 1} The state filed a motion for en banc consideration, suggesting that the law of this district is unsettled given a conflict between *State v. Sanders*, 12th Dist. Butler No. CA2003-12-311, 2004-Ohio-6320 and *State v. Garrett*, 12th Dist. Butler No. CA2018-03-048, 2019-Ohio-750. Pursuant to App.R. 26(A)(2) and Loc.R. 18(D) this court determined that a conflict exists, and hereby grants the state's motion for en banc consideration as to the proper method of appellate review when determining whether a defendant holds a

position of trust to his or her victim according to R.C. 2929.13.

{¶ 2} After holding an en banc conference pursuant to Loc.R. 18(D), a majority of the judges of this court now overrule our previous holding in *Garrett* and reiterate that the proper review of a trial court's finding of a position of trust remains whether the finding is supported by the record.

### *Facts and Procedural History of Garrett*

{¶ 3} Latisha Garrett was a home-health care worker employed by Visiting Angels whose motto was "to serve and protect elderly clients." She was assigned to care for the victim, who was 105 years old at the time. The victim had recently been diagnosed with early-onset Alzheimer's and relied upon Garrett for in-home care. Through information Garrett learned while caring for the victim, Garrett and her boyfriend orchestrated a deceptive plan for the victim to give them $4,800.

{¶ 4} Garrett gave her boyfriend the victim's telephone number in order for the boyfriend to call the victim and pretend to be the victim's grandson. Garrett's boyfriend posed as the victim's grandson and called the victim asking for money to help with his broken-down vehicle. Due to the victim's reliance upon Garrett, the victim believed it was her grandson on the phone.

{¶ 5} Garrett then offered to take the victim to the bank, where the victim withdrew cash from her account. Garrett suggested that she would take the money to the victim's grandson, and the victim entrusted the money to Garrett. Garrett and her boyfriend then absconded with the money.

{¶ 6} Garrett pled guilty to telecommunications fraud and theft from a person in a protected class. After the plea hearing, the trial court accepted sentencing memoranda from the state and Garrett, including argument regarding the issue of whether Garrett held a position of trust that facilitated the crime. The trial court also heard from the parties on

the issue during the sentencing hearing, considered Garrett's presentence investigatory report ("PSI"), and considered the victim impact statement. The trial court found that Garrett held a position of trust that facilitated the crime, and as such, sentenced Garrett to 18 months in prison rather than community control.

{¶ 7} Garrett appealed the trial court's decision, and a majority of the three-judge panel who heard the appeal voted to reverse the trial court's sentence. The majority determined that Garrett did not hold a position of trust because the record did not support the trial court's finding because there was no analysis or discussion of the fiduciary nature of the position.

{¶ 8} In so deciding, the *Garrett* majority relied on an Ohio Supreme Court case, S*tate v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, in which the court compared positions of trust held by private individuals to fiduciary relationships. During this court's en banc consideration, we considered whether our prior decision in *Sanders* remains proper precedent given the Ohio Supreme Court's guidance set forth in *Massien*.

### Massien

{¶ 9} In *Massien*, the Ohio Supreme Court was posed two narrow questions: (1) can private individuals hold a position of trust; and (2) do nurses hold a position of trust to their employer-hospital simply by virtue of their employment? In answering the first question in the affirmative, the court briefly expressed concern regarding the possible expansion of what it means to hold a position of trust, noting its belief that the legislature never "intended the phrase to apply to all individuals who breach any private expectation of trust." *Massien* at ¶ 5.

{¶ 10} The *Massien* Court noted its concern regarding the way various appellate courts had construed the phrase "position of trust" and the vast differences among the phrase's application. The court addressed the fact that some appellate courts found a

breach of the position of trust for "virtually any public or private individual whose offense relates to a breach of any trust." *Massien* at ¶ 14. As examples, the court referenced a college student entrusted with school property, a parent who failed to pay child support, as well as a delivery driver entrusted with others' property. None of the examples involved a special relationship with the victim, i.e.; the college, the residential parent, the final destination of delivery.[1]

{¶ 11} On the other hand, the court noted that other districts found that private individuals could not hold positions of trust. The *Massien* Court was not willing to limit application of the statutory "position of trust" in that strict a manner, and held instead that private individuals can hold a position of trust. However, and to avoid overextension of the statute, the court provided that "a private individual holds a position of trust only if he or she occupies a special relationship equivalent to a fiduciary relationship." *Id.* at ¶ 2.

{¶ 12} When explaining what a fiduciary relationship entails, the *Massien* Court noted that "a 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Id.* at ¶ 35. The court further noted that being a fiduciary involves "having a duty, created by his undertaking, to act *primarily for the benefit of another* in matters connected with his undertaking." (Emphasis sic.) *Id.*

{¶ 13} While *Massien* provides guidance to trial and appellate courts when determining whether a position of trust exists by reference to fiduciary relationships, the court never required a contract or any formal agreement creating a fiduciary relationship between the defendant and his or her victim. Instead, the court noted, "*a fiduciary*

---

1. Unlike a mother who does not pay child support to the residential parent, Garrett's crimes had a very specific victim who trusted Garrett to provide care and protection. Thus, Garrett's relationship to the victim is in no way comparable to the tenuous connections between the victim and perpetrator given as examples in *Massien*.

- 4 -

*relationship* need not be created by contract; it may arise out of *an informal relationship where both parties understand that a special trust or confidence has been reposed.*" (Emphasis added.) *Id.* at ¶ 35. Thus, the analysis of whether a defendant holds a position of trust is a factual determination that will differ based on the circumstances of the individual case.

{¶ 14} The circumstances in *Massien* were such that the defendant was a nurse whose victim was the hospital for whom she worked and from whom she stole. The *Massien* court emphasized that it was not presented with a matter in which the nurse stole from a patient being cared for. As such, and because the nurse's only connection with the hospital was employment, the *Massien* court analyzed whether nurses in general have relationships akin to fiduciaries to the hospitals that have given them employment.

{¶ 15} The court never addressed Massien, herself, or the duties she had to her patients. Instead, the court addressed the inherent differences between doctors and nurses, and their respective responsibilities to the hospital. The court considered both positions' "superior knowledge and skill," as well as the discretion inherent in each position.[2] *Massien* determined that nurses, unlike physicians, do not hold the special relationship comparable to a fiduciary relationship to the hospital for lack of discretion and decision-making.

{¶ 16} Other than the holding that nurses do not hold a position of trust to their employer/hospital, *Massien* also held that private individuals can hold a position of trust with the guidance that such position of trust is equivalent to a fiduciary relationship. Even though

---

2. The majority in our previous *Garrett* decision used this analysis to determine that the record did not support the trial court's finding of position of trust because nothing in the record showed that Garrett had superior knowledge, skill, or discretion given her limited wage and high school education. However, the reference to these more specific characteristics above and beyond the general definition of fiduciary were made during the court's comparison of doctors and nurses, as well as the court's analysis that not all employees are fiduciaries to their employers. As such, the emphasis upon aspects of superior knowledge, skill, and discretion are not applicable to Garrett because we were not asked to decide whether Garrett was a fiduciary to her employer, Visiting Angels, or if home health care workers, in general, are fiduciaries to their employers.

*Massien* was decided after this court's decision in *Sanders*, *Sanders*' efficacy was not limited by anything discussed in *Massien*.

### *Sanders*

{¶ 17} In *Sanders*, this court affirmed the conviction and sentence after Sanders was found guilty of patient abuse and assault. Sanders was on duty at a residential center that cared for mentally handicapped patients. She provided day-to-day direct care to residents of the center. Two employees witnessed Sanders hit a patient in his groin multiple times with a cordless phone. The patient cried in pain and asked Sanders to stop hitting him. The same patient was later found crying on the hallway floor face down, with the implication being that Sanders harmed him in some way. The patient suffered bruises to his groin where Sanders hit him with the phone, as well as injuries to his eye, possibly from the hallway incident.

{¶ 18} After the jury found Sanders guilty of patient abuse and assault, the trial court sentenced Sanders to prison after making the finding that Sanders was in a position of trust that related to the offense.[3] On appeal, Sanders argued that the trial court's finding she held a position of trust was unsupported. This court disagreed and affirmed the trial court's finding. In so doing, we referenced facts from the record: the victim was a mentally handicapped patient, the victim had limited communication skills, the victim lived in the center where Sanders was a caregiver, and Sanders was supposed to provide care, comfort, and security to the residents.

### *Massien Applied to Sanders and Garrett*

{¶ 19} An analysis based solely on the relationship between employee/employer is inapplicable to both *Sanders* and *Garrett* where Sanders' victim was a patient in a

---

3. The version of the statute in place at the time *Sanders* was decided was slightly different in wording, but not in effect.

residential facility and Garrett's victim was a 105 year-old-woman with Alzheimer's who Garrett was entrusted to care for. The *Massien* case is therefore distinguishable upon the facts from both *Sanders* and *Garrett* in that manner, and does not undermine a finding that Sanders or Garrett held a position of trust. Unlike *Massien*, where the record did not "establish that Massien breached a duty of trust to any patient or that any patient was harmed as a result of her actions," Garrett breached a duty of trust she owed her victim, the 105-year-old woman entrusted to her care, so that an identifiable victim was harmed as a result of Garrett's actions. *Id.* at ¶ 36.

{¶ 20} Nor does *Massien* make it a requirement that the trial court's finding that a position of trust exists include a specific discussion of the victim and the defendant's special relationship equivalent to fiduciary relationship.

{¶ 21} The *Massien* court, despite its pronouncement that private individuals can hold positions of trust if such are akin to a fiduciary relationship, did not require a trial court make special findings specific to the existence of a special relationship equivalent to a fiduciary relationship. Instead, the court noted the application of R.C. 2929.13(B) requires only that the "trial court makes any of the findings" included in the statute. *Id*. at ¶ 8. In both *Sanders* and *Garrett*, the trial court properly abided by the controlling statute when finding that their defendant held a position of trust.

{¶ 22} While the majority in *Garrett* considered the applicability of *Sanders*, it found the trial court's reliance merely upon facts within the record abridged by *Massien*. However, our previous *Garrett* decision incorrectly limited the efficacy of *Sanders* because the standard of review for whether a defendant holds a position of trust remains the same post-*Massien*: is the trial court's finding supported by the record?

{¶ 23} Applying the correct rules and precedent, as set forth in *Sanders* and *Massien*, this court need only determine whether the trial court's finding that Garrett held a

position of trust was supported by the record. To aid in that review, we utilize the well-established law regarding review of felony sentences, as well as the guidance set forth in *Massien* that a private person's position of trust with the victim needs to be equivalent to a fiduciary relationship.

{¶ 24} We review all felony sentences pursuant to R.C. 2953.08(G)(2) and will reverse a trial court's sentence only if such sentence is clearly and convincingly contrary to law or is otherwise unsupported by the record. *State v. Ford*, 12th Dist. Clermont No. CA2018-07-052, 2019-Ohio-1196, ¶ 9. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8. We have previously noted that the standard of review when reviewing a felony sentence pursuant to R.C. 2953.08(G)(2)(b) is "extremely deferential" to the trial court. *State v. Geldrich*, 12th Dist. Warren No. CA2015-11-103, 2016-Ohio-3400, ¶ 6.

{¶ 25} Before making the finding that Garrett held a position of trust, the trial court had the benefit of sentencing memoranda from the parties, Garrett's PSI, statements from Garrett and the state at the sentencing hearing, as well as the victim impact statement.[4] Based on the information contained within those sources, the trial court found that Garrett held a position of trust that facilitated her crimes. The record supports this finding.

{¶ 26} *Massien's* holding that the private individual's position need be a special relationship of trust and confidence, and that the trust be reposed in the integrity and fidelity of another resulting in superiority or influence brought on by virtue of special trust, applies

---

4. Garrett never raised orally or in her sentencing memorandum that *Massien* supported her argument that she did not hold a special relationship equivalent to a fiduciary relationship with the victim.

to Garrett's relationship with the vulnerable victim.[5]  The record demonstrates that Garrett's duties included providing home health care to the victim, who had recently been diagnosed with early onset Alzheimer's.  Moreover, there is no doubt Garrett's relationship with the victim was one where Garrett had a duty to act primarily for the benefit of another, as the only reason she entered the victim's home was to provide her care.

{¶ 27} Garrett came into the victim's home for multiple hours at a time to care for her and provide services that a 105 year-old-woman would require but could not do herself. During the plea hearing, the state recited the facts, including that Garrett was in the victim's home "on duty as a care giver employed by Visiting Angels" whose motto, as later referenced in the victim impact statement, was to "serve and protect elderly clients."

{¶ 28} The record also demonstrates that the victim placed her trust and confidence in Garrett, as Garrett and her boyfriend were easily able to influence the vulnerable victim to believe a scenario that one with full capacity would not have believed.  Garrett gleaned information from the victim about the victim's family that Garrett then gave to her boyfriend in order to fake a relative's emergency and pose as the victim's grandson.

{¶ 29} Garrett listened in on the phone conversation and was able to use her position of superiority as caregiver to influence the victim into believing it was the victim's grandson on the phone.  Relying on the trust she had built with the victim, Garrett took the victim to the bank, went inside with her, and helped the victim withdraw $4,800 in cash.  At Garrett's suggestion and offer to take the money to the victim's grandson in Dayton, the victim willingly gave Garrett the cash in an envelope.  These facts demonstrate that the victim had

---

5. The *Garrett* majority included a quote from *Massien* that referenced a "special relationship" similar to the interaction between a victim and his or her doctor, lawyer, or accountant.  However, that quote was a reference by the *Massien* Court to how an appellate court could perceive fiduciary relationships.  Nowhere in *Massien* did the court limit a fiduciary relationship to certain jobs, require any holding of an advanced degree, or require a fiduciary relationship to involve one's healthcare, legal issues, or finances.  Even so, we would note that Garrett had direct impact on the victim's healthcare in that she performed services of an in-home health care provider, exercising obvious superiority and influence over the victim, breaching any responsibilities of fidelity and loyalty.

a special trust and confidence in Garrett in that she went with Garrett to her bank, had Garrett help her withdraw $4,800, and then handed the money over to Garrett, trusting that Garrett would take the money and aid her grandson and his emergency.

{¶ 30} While the previous *Garrett* majority assumed that the trial court had not taken *Massien* into consideration, we reiterate that neither the statute nor *Massien* require any special findings by the trial court that an *actual* fiduciary relationship exists. Nor does the statute or *Massien* require that the trial court make special findings that the position of trust is *equivalent* to a fiduciary relationship. Instead, the trial court need only make a finding, according to both the statute and *Massien*, that the defendant held a position of trust and that the position of trust facilitated the offense.

{¶ 31} The previous majority in *Garrett* presumed the trial court was unaware of the discussion and guidance given in *Massien*; we make no such presumption. We note only that the record supports the trial court's overall required finding, which is our only question on review. We need only look to the facts of a particular case that support the trial court's finding of a position of trust, and we will not say the trial court's finding specific to Garrett was clearly and convincingly not supported by the record.

{¶ 32} Moreover, the sentence was not contrary to law where the trial court properly considered the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposed postrelease control, and sentenced Garrett within the permissible statutory range.

### *Conclusion*

{¶ 33} To secure and maintain uniformity of the court's decisions, the court hereby confirms and adopts the holding in *State v. Sanders*, 12th Dist. Butler No. CA2003-12-311, 2004-Ohio-6320 and we further overrule *State v. Garrett*, 12th Dist. Butler No. CA2018-03-048, 2019-Ohio-750 and affirm the trial court. As such, the sentence imposed upon Garrett

by the trial court is hereby reinstated.

HENDRICKSON, P.J., S. POWELL, and PIPER, JJ., concur.

RINGLAND and M. POWELL, JJ., dissent.

**RINGLAND and M. POWELL, JJ., dissenting.**

{¶ 34} In *Massien*, the Ohio Supreme Court ruled that a private person may hold a "position of trust" for purposes of R.C. 2929.13(B)(1)(b)(viii). However, it cautioned that "the General Assembly intended a narrow application of the phrase 'position of trust'" as it relates to private persons. *State v. Massien*, 125 Ohio St.3d 204, 2010-Ohio-1864, ¶ 22. The supreme court admonished that the statute "does not apply to all positions of trust held by private individuals" but only in instances of "a special relationship of trust and confidence equivalent to a fiduciary relationship." *Id.* at ¶ 2. Thus, the supreme court made clear that not all private positions of trust qualify as a "position of trust" under R.C. 2929.13(B)(1)(b)(viii).

{¶ 35} As detailed by the majority opinion, upon recognizing the limited application of R.C. 2929.13(B)(1)(b)(viii) to private individuals, the supreme court proceeded to describe the nature of the special fiduciary relationship which is necessary for a private person to occupy a "position of trust" under the statute. Having identified those requisites, the supreme court applied them to the facts in *Massien* and ruled that a nurse did not occupy a fiduciary relationship with her hospital employer.

{¶ 36} In analyzing whether a nurse occupies a fiduciary relationship to her hospital employer, the supreme court examined the nature of a nurse's job duties. The supreme court held that "emphasis should be placed upon whether the assigned job duties require, as essential qualifications over and above technical competency requirements, a high

- 11 -

degree of trust, confidence, reliance, integrity and fidelity." *Massien* at ¶ 37, quoting *State ex rel. Charlton v. Corrigan*, 36 Ohio St.3d 68 (1988), syllabus. Continuing, the supreme court held, "Job duties that require a great degree of discretion support the existence of a fiduciary relationship, whereas assigned duties of a routine character do not involve the degree of discretion or trust necessary to be considered a fiduciary." *Massien* at ¶ 37. "A further consideration involves whether the employee's responsibility includes 'daily discretionary decisions' affecting persons served by the employer that require the employee to be 'of higher than normal reliability.'" *Id.*, quoting *Charlton* at syllabus.

{¶ 37} The majority distinguishes *Massien* and the applicability of its analysis on the ground this case does not involve an employment relationship. However, the same or a similar analysis must be utilized in non-employment situations to implement the narrow application of R.C. 2929.13(B)(1)(b)(viii) to private individuals as directed by the supreme court. Examination of whether duties are routine or discretionary and the manner in which the offender's responsibilities benefit the person served is necessary to determine whether an offender committed a breach of a fiduciary duty in relation to the offense or merely a simple breach of trust.

{¶ 38} The record in this case did not support the trial court's finding that Garrett shared a fiduciary relationship with the victim. The transcripts of the hearings, the parties' sentencing memoranda, the presentence investigative report, and the victim impact statement reflect the following: Garrett was a 34-year-old, high school-educated employee of Visiting Angels earning $12 an hour as a "caregiver;" Visiting Angels' marketing slogan was to "serve and protect elderly clients;" Garrett was periodically scheduled to be in the victim's home for brief periods as evidenced by the fact she was scheduled to be in the victim's home for two hours on the day of the offense; Garrett performed some unspecified in-home services for the victim; and Garrett had generally provided her clients

transportation to the bank and took the victim to the bank on the day of the offense.

{¶ 39} Based upon this evidence, the trial court concluded that Garrett occupied a "position of trust" to the victim. In other words, the trial court found that this evidence supported a finding that Garrett's relationship with the victim was "one in which special confidence and trust is reposed in the integrity and fidelity of [Garrett] * * * resulting [in a] position of superiority or influence, acquired by virtue of this special trust," or that Garrett's responsibilities included discretionary functions requiring that she be "of higher than normal reliability." *Massien,* 2010-Ohio-1864 at ¶ 35, 37. However, the record does not reflect Garrett's "undertaking" on behalf of the victim. Without such evidence, the court is left to speculate whether Garrett had "a duty, created by [her] undertaking, to act *primarily for the benefit of [the victim]* in matters connected with [Garrett's] undertaking." (Emphasis sic.) *Id.* at ¶ 35. Thus, even if Garrett occupied a "position of trust" with the victim in some context, R.C. 2929.13(B)(1)(b)(viii) would not apply to crimes she committed against the victim which were unconnected to that "position of trust." As this offense is a financial crime, a critical issue involves whether Garrett's undertaking on behalf of the victim included a duty to act for the benefit of the victim in the victim's financial affairs.

{¶ 40} The majority relies upon Garrett's job title, her employer's marketing slogan, Garrett's performance of unspecified duties in the victim's home, and the circumstances of the offense in concluding that the record supported the trial court's finding that Garrett occupied a "position of trust."

{¶ 41} In arriving at the proper standard to be applied in determining whether a private person occupied a "position of trust," the supreme court cited with approval the First Appellate District's approach of restricting the statute to private individuals "in professions 'traditionally thought to invoke a special relationship of trust - such as doctor, lawyer or accountant,'" and found that approach consistent with the purposes and principles of felony

sentencing. *Massien*, 2010-Ohio-1864 at ¶ 16, quoting *State v. Condon*, 152 Ohio App.3d 629, 2003-Ohio-2335, ¶ 104 (1st Dist.). In contrast to this case, the duties of a doctor, lawyer, and accountant are generally understood. These professions are state regulated, have licensure requirements, and are subject to codes of professional conduct. Those job titles alone convey a great deal of information as to the relationship each has with his or her patients or clients.

{¶ 42} The nursing profession is much like that of a doctor, lawyer, and accountant in that the profession is subject to state regulation and licensure. Most people have personal experience with a nurse. Thus, the *Massien* court knew the general nature of Massien's duties and her relationship to her employer and patients based upon the fact that she was a "nurse."

{¶ 43} A "caregiver's" duties are not so well defined as those of a doctor, lawyer, accountant, or nurse. The duties of a "caregiver" will differ from one situation to another and little may be inferred from such a job title about the relationship of a certain "caregiver" to her client. When considering whether a "caregiver" occupies a "position of trust" to his or her client, the job title and the employer's marketing slogan cannot substitute for information as to the "caregiver's" duties in determining whether the "caregiver" occupies a special relationship of trust and confidence with those served.

{¶ 44} Nor do the facts of the offense provide the necessary fundament for determining that an offender occupies a "position of trust" in relation to the offense. Indeed, holding that an offense involving a breach of trust places the offender in a "position of trust" begs the question. The establishment of the "position of trust" is the predicate to determine whether the offense related to that position of trust, not vice versa.

{¶ 45} The record does not support the characterization of Garrett as a "home health care provider." Visiting Angels referred to its employees as "caregivers," not "home health

care providers." Garrett's lack of higher education and wages do not suggest that she is qualified to provide health care. It is more likely that Garrett assisted with routine housekeeping chores, such as cooking, cleaning, meal preparation, laundry, and perhaps with the victim's personal hygiene. Regardless, because this case involved a financial crime, it remains necessary for the record to reflect that Garrett undertook some fiduciary duty with respect to the victim's finances to support a finding that Garrett occupied a "position of trust" in relation to the offense.

{¶ 46} The facts of *Massien* illustrate the limited application of R.C. 2929.13(B)(1)(b)(viii) to private individuals. Sally Massien was employed by a hospital as a nurse. In her position, Massien was trusted by her employer hospital to access narcotic drugs to further the hospital's mission of serving its patients. Massien breached that trust and stole narcotics for her own use. Yet, the supreme court ruled that Massien did not hold a "position of trust" because Massien's relationship with her employer was not equivalent to a fiduciary relationship. Thus, a private person merely occupying a position where trust and fidelity should be expected does not fall within the ambit of the statute. "[W]e do not believe that the legislature intended the phrase to apply to all individuals who breach any private expectation of trust." *Massien*, 2010-Ohio-1864 at ¶ 21. "An unrestrained application of the phrase 'position of trust' to 'every breach of ethical, moral, or filial duty by a private individual' is not consistent with the sentencing principles set forth by the General Assembly, * * * or with the language of R.C. 2929.13(B)(1)." *Id.*, citing *State v. Brewer*, 1st Dist. Hamilton No. C-000148, 2000 Ohio App. LEXIS 5455, *6 (Nov. 24, 2000). This case is much like *Massien* in that both involve crimes arising from a simple breach of trust.

{¶ 47} *Sanders* is of no precedential value in resolving the issue in this case. In that case, Nicole Sanders was employed as a "resident specialist" at a County Department of Mental Retardation residential center. A "resident specialist" was responsible for the day-

to-day direct care of the residents of the center. We described the mission of the center as providing "care, comfort, and security" to its residents. Sanders was charged with fourth-degree felony patient abuse for physically abusing a 56-year-old mentally handicapped resident with limited communication skills who was completely dependent upon the center's staff for his daily care. Sanders was convicted of the offense and was sentenced to a prison term after the trial court found that she occupied a "position of trust" in relation to the offense.

{¶ 48} *Sanders* was decided before the supreme court issued its guidance in *Massien.* Thus, there is no analysis of whether Sanders' position as a "resident specialist" was the equivalent of a fiduciary relationship to the victim. Furthermore, even if Sanders did occupy such a "position of trust" due to her responsibility to promote the center's mission of providing "care, comfort, and security" to its residents, by physically abusing the victim, Sanders breached a trust directly related to that responsibility. In contrast, this case involves a financial crime. Whatever inferences may be made from the record in this case about Garrett's responsibility to her victim, such inferences do not include a responsibility regarding the victim's finances. That is, the record does not support a finding that Garrett's offense involved a breach of a duty connected to any fiduciary "undertaking," as required by *Massien.*

{¶ 49} We do not criticize *Sanders* based upon the law at the time it was decided. At that time, the supreme court had not clarified that a R.C. 2929.13(B)(1) "position of trust" does not "apply to all positions of trust held by private individuals" but must be "a special relationship of trust and confidence equivalent to a fiduciary relationship." *Massien*, 2010-Ohio-1864 at ¶ 2. It was for this reason that we did not overrule *Sanders* in *Garrett.* Upon reflection, and in view of *Massien,* we should have overruled *Sanders* to the extent that it may be understood to hold that a "caregiver" is a "position of trust" as a matter of law.

{¶ 50} In *Garrett*, we did not find as a matter of law that a "caregiver" is not a "position

of trust." We found that the record did not support the trial court's finding that Garrett occupied a "position of trust" as required by R.C. 2953.08(G)(2). Therefore, rather than simply reversing, we reversed and remanded to the trial court for a new sentencing hearing pursuant to R.C. 2929.19(A). At the resentencing hearing, the statute requires the sentencing court to afford the state an opportunity to present information "relevant to the imposition of sentence." Thus, the state would have the opportunity to supplement the record to support a finding that Garrett shared a "special relationship of trust and confidence [with the victim] equivalent to a fiduciary relationship."

{¶ 51} Based upon this record, applying the R.C. 2929.13(B)(1)(b)(viii) "position of trust" to Garrett runs contrary to the supreme court's guidance that R.C. 2929.13(B)(1)(b)(viii) have a narrow application and be limited to "private individuals who occupy a special relationship of trust and confidence equivalent to a fiduciary relationship and whose offense relates to that fiduciary relationship [to prevent] the disqualification of persons who are not clearly meant to be excluded[.]" *Massien*, 2010-Ohio-1864 at ¶ 34.

{¶ 52} Garrett offered to do the victim the "favor" of delivering money to the victim's grandson. The victim trusted Garrett to do so. By stealing the money, Garrett committed a simple breach of that trust. However, based upon the little known of Garrett's job duties and the nature of the resulting relationship she shared with the victim, the record does not support a finding that Garrett breached any duties of a fiduciary nature by participating in the theft of the money the victim entrusted to her.

{¶ 53} For the reason set forth herein, those set forth in the *Garrett* majority opinion, and with regard and respect for our colleagues in the majority, we dissent.