[Cite as *State v. Rowland*, 2020-Ohio-2984.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2019-08-084 |
| Appellee, | : | O P I N I O N<br>5/18/2020 |
| | : | |
| - vs - | : | |
| | : | |
| RONALD ROWLAND, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 18CR34108

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Kim Bui, 8080 Beckett Center Drive, Suite 112, West Chester, Ohio 45069, for appellant

**M. POWELL, J.**

{¶ 1} Appellant, Ronald Rowland, appeals from his convictions in the Warren County Court of Common Pleas for rape and gross sexual imposition. For the reasons detailed below, we affirm.

{¶ 2} Rowland was indicted in May 2018 on 12 counts of rape and 6 counts of gross sexual imposition. The charges stemmed from allegations that Rowland sexually abused

his granddaughters, A.R., A.R.2, and B.R., on numerous occasions between 2009 and 2017. Rowland pled not guilty and the charges were tried to a jury commencing on July 29, 2019.

{¶ 3} The three victims and Detective Nicholas Behymer of the Warren County Sheriff's Office testified on behalf of the state. During their testimonies, the three victims detailed the instances of sexual assault. A.R. testified that the abuse began when she was 12 years old. According to A.R., the first instance of sexual abuse occurred when she was alone with Rowland in his room. A.R. testified that she and Rowland were talking about relationships when he began to touch her "butt," and proceeded to touch her vagina both on top and under her clothing. When A.R. was a freshman in high school, the sexual abuse escalated to sexual intercourse. Throughout her testimony, A.R. detailed numerous acts of vaginal penetration, fellatio, cunnilingus, and digital penetration that occurred when she was alone with Rowland at his home in Carlisle, Ohio, A.R.'s home in Franklin Township, Ohio, or her family's rental home in Franklin, Ohio.

{¶ 4} A.R. indicated the abuse continued until she reached 17 years old. At that time, A.R. confronted Rowland about the ongoing abuse and told him it needed to stop.

{¶ 5} A.R.2 related that Rowland sexually assaulted her when she was six or seven years old and she and Rowland were alone in the shed behind his home in Carlisle, Ohio. According to A.R.2, she and Rowland went into the shed for gardening supplies when Rowland took off her pants and touched her vagina with his finger.

{¶ 6} B.R., who is A.R.2's sister and A.R.'s cousin, testified that the abuse began when she was 9 years old. According to B.R., the first instance of sexual abuse occurred when she was alone with Rowland in the shed behind his home. That day, B.R. was showing off her new princess training bra to members of her family. Rowland brought B.R. to the shed and she lifted her shirt to show Rowland her new bra. At that point, Rowland

pulled down B.R.'s shirt, put his hand up her shirt, and squeezed her breast. He then patted B.R. on the shoulder and indicated, "Yeah, you're becoming a woman." B.R. described additional instances of inappropriate behavior by Rowland, including Rowland touching the outside of her vagina under her underwear, digital penetration, and inappropriate kissing. Each of the instances B.R. described occurred at Rowland's home when he and B.R. were alone.

{¶ 7} When B.R. turned 17 years old she disclosed the abuse to her mother. Shortly thereafter, B.R. disclosed the abuse to A.R. and A.R.2, who responded that Rowland had also raped and touched them. A.R. then disclosed the abuse to her father. The victims went to Children's Hospital for physical exams and the case was referred to the Warren County Sheriff's Office.

{¶ 8} Rowland and Dr. David Miller, Rowland's urologist, testified on behalf of Rowland. Following the state's case-in-chief, Rowland moved the court for acquittal pursuant to Crim.R. 29. The trial court granted the motion with regard to Count 9, which alleged Rowland compelled A.R. to engage in vaginal intercourse by force or threat of force, and denied the motion in all other respects.

{¶ 9} On July 31, 2019, the jury found Rowland guilty of eight counts of rape and two counts of gross sexual imposition. After a hearing, The trial court sentenced Rowland to life in prison without possibility of parole for 10 years on Count 1, rape of a victim less than 13 years of age; 36 months in prison on Count 2, gross sexual imposition; 6 years in prison for each of the remaining seven rape counts; and 48 months in prison on Count 14, gross sexual imposition. The trial court ordered that all counts were to be served consecutively to one another, except Count 2, which was to be served concurrently to all other charges. In total, the trial court sentenced Rowland to an aggregate prison term of 56 years to life.

{¶ 10} Rowland now appeals, raising five assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE STATE FAILED TO PROVE ALL OF THE ELEMENTS OF RAPE UNDER COUNT 1, SPECIFICALLY QUALIFYING FACTS OF "SEXUAL CONDUCT," AND THEREFORE THE COURT SHOULD HAVE DISMISSED COUNT 1 PURSUANT TO RULE 29. THIS CONVICTION & IMPOSITION OF THE STATUTORY LIFE SENTENCE SHOULD BE VACATED.

{¶ 13} Rowland argues that one of his rape convictions is not supported by sufficient evidence because the state failed to prove penetration.

{¶ 14} Crim.R. 29(A) provides that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court reviews the denial of a Crim.R. 29(A) motion pursuant to the same standard as that used to review a sufficiency-of-the-evidence claim. *State v. Wright*, 12th Dist. Fayette No. CA2017-10-021, 2018-Ohio-1982, ¶ 22.

{¶ 15} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *Id.* at ¶ 23. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 22.

{¶ 16} In Count 1, Rowland was convicted of rape, in violation of R.C. 2907.02(A)(1)(b), which provides in relevant part that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person

- 4 -

is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶ 17} As pertinent to this appeal, sexual conduct means "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A); *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 38 (sexual conduct includes digital penetration).

{¶ 18} The allegations in Count 1 related to the first time that Rowland assaulted A.R. At trial, A.R. testified that when she was 12 years old, she and Rowland were sitting at the end of his bed discussing relationships and dating. During the conversation Rowland indicated he "wanted to show [A.R.] certain sexual things" in order to prepare her for when she was in a relationship, and asked if he could be her "teacher." At that point, Rowland began rubbing A.R.'s "butt" and moved slowly to her "vagina area." Rowland proceeded to move his hands inside of A.R.'s pants and underwear, and touched her clitoris. A.R. described the touching in detail, and stated Rowland "used his fingers to go between the lips and started touching [her] clitoris." A.R. clarified that the clitoris was located inside her vaginal opening.

{¶ 19} Rowland argues that based upon A.R.'s testimony, the state failed to present evidence that Rowland "inserted his finger or any body part/object inside her vaginal opening." Thus, Rowland asserts the state did not prove penetration occurred.

{¶ 20} Viewing A.R.'s testimony in a light most favorable to the prosecution, we find there was sufficient evidence of penetration. This court has observed that "[p]enetration of the vaginal cavity requires introduction of an object from without, which necessary implies some forceful spreading of the labia majora. The penetration need only be slight. Therefore, if the object is introduced with sufficient force to cause the labia majora to spread,

penetration has occurred." *State v. Meador*, 12th Dist. Warren No. CA2008-03-042, 2009-Ohio-6548, ¶ 12, citing *State v. Grant*, 2d Dist. Montgomery No. 19824, 2003-Ohio-7240, ¶ 30. Based upon A.R.'s testimony, a jury could find that Rowland's conduct in "using his fingers to go between the lips" and touch her clitoris, which she described as "located inside her vaginal opening," necessarily caused A.R.'s labia majora to spread. *See State v. Lucas*, 2d Dist. Montgomery No. 18644, 2001-Ohio-1350, *7 ("It is sufficient if the evidence shows that the force of the object caused the outer lips of the victim's vagina, the labia, to spread"). As a result, A.R.'s testimony, if believed, is sufficient to prove that Rowland penetrated A.R.'s vaginal cavity.

{¶ 21} We further reject Rowland's argument that A.R.'s testimony merely established Rowland touched A.R., not that he inserted any body part into her vaginal opening. Rather, A.R.'s testimony indicated that Rowland inserted his fingers into A.R.'s "vaginal opening." Although A.R. used the term "touch" as opposed to "insert" when describing Rowland's actions, a jury could reasonably conclude that Rowland necessarily inserted part of his finger into A.R.'s vagina when he "went between the lips" and touched inside A.R.'s vaginal opening far enough to reach her clitoris. *See State v. Gilbert*, 10th Dist. Franklin No. 04AP-933, 2005-Ohio-5536, ¶ 35-36 (sufficient evidence of penetration where the victim testified that "defendant inserted his fingers inside the lips of her vagina far enough to reach her clitoris (a part of the vulva), an action that undoubtedly caused the labia majora to spread").

{¶ 22} In light of the foregoing, we find there was sufficient evidence to find that Rowland penetrated A.R.'s vagina when A.R. was less than 13 years of age. Thus, the trial court did not err in denying Rowland's Crim.R. 29 motion.

{¶ 23} Rowland also argues in his first assignment of error that the trial court erred by failing to give the jurors the statutory definition of sexual conduct, despite being asked

by the jury for clarification regarding sexual penetration.

{¶ 24} "[W]here, during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request." *State v. Carter*, 72 Ohio St.3d 545, 553, 1995-Ohio-104. Thus, in response to a question from the jury, it is within the sound discretion of the trial court to provide supplemental instructions or to refer the jury to instructions already provided. *State v. Frymire*, 12th Dist. Butler No. CA2014-02-034, 2015-Ohio-155, ¶ 13.

{¶ 25} During jury deliberations the jury submitted a question to the trial court asking "can we have a legal definition of penetration. What constitutes rape? Does "penetration" mean slightly between the lips or is it into the vaginal canal?" The trial court informed counsel of the jury's question and provided the following answer to the jury: "I cannot provide you with any additional clarification on these questions. Please refer to the written instructions that you have with you." In the written jury instructions, the trial court had instructed that "sexual conduct means * * * the insertion, however slight of any part of the body, with instrument, apparatus or object into the vaginal cavity of the other without privilege to do so. Penetration, however slight is sufficient to complete vaginal intercourse." Defense counsel did not object to the trial court's response to the jury's question.

{¶ 26} On appeal, Rowland argues the trial court's response to the jury's question was plain error, as the definition requested by the jury is provided in the Ohio Revised Code and would have assisted the jury in making a proper determination on whether Rowland committed the act of rape.

{¶ 27} Initially, because defense counsel failed to timely object to the court's response to the jury's question, "any error in the response given by the court is waived unless it was plain error." *City of Fairfield v. Osterbrock*, 12th Dist. Butler No. CA97-03-053, 1997 Ohio App. LEXIS 4379, *5 (Sept. 29, 1997), citing *State v. Cole*, 1st Dist.

Hamilton No. C-950900, 1997 Ohio App. LEXIS 163 (Jan. 22, 1997). To constitute plain error, (1) the trial court's response must have been erroneous and (2) without the error, the result of the trial would have been different. *Id.* Thus, because defense counsel failed to object, Rowland must demonstrate that the trial court's failure to respond differently to the jury's question prejudiced Rowland.

{¶ 28} After a review of the record, we find the court acted within the scope of its discretion in referring the jury to the instructions previously given. The trial court's written instruction mirrored the Ohio Jury Instruction, CR Section 507.02(A)(1), and properly instructed the jury regarding the definitions of "penetration" and "rape" pursuant to Ohio law. Furthermore, Rowland has failed to present any argument that the trial court's response was prejudicial to him. Regardless, based on our discussion above, we find Rowland cannot show prejudice in the trial court's response where A.R.'s testimony was sufficient to prove each and every element of Rowland's rape conviction in violation of R.C. 2907.01(A), including penetration. Thus, even if the trial court had further explained the definitions of "rape" and "penetration," Rowland cannot show that the outcome of the trial would have been different.

{¶ 29} Finding no error in the trial court's decision to deny Rowland's Crim.R. 29 motion, or its response to the jury's question regarding the definition of "rape" and "penetration," Rowland's first assignment of error is overruled.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE JURY'S VERDICT WAS INCONSISTENT AND THE GUILTY FINDINGS WERE NOT SUPPORTED BY SUFFICIENT, CREDIBLE EVIDENCE, AND WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE. THE TRIAL COURT ERRED SHOULD (sic) HAVE SET ASIDE THE JURY'S VERDICT AND ENTERED A JUDGMENT OF ACQUITTAL.

{¶ 32} In his second assignment of error, Rowland argues the trial court's decision to give the "*Howard* charge" to the jury coerced the jury into reaching a unanimous and inconsistent verdict. As a result, Rowland claims he was deprived of his right to a hung jury.

{¶ 33} In *State v. Howard*, 42 Ohio St.3d 18 (1989), the Ohio Supreme Court rejected the *Allen* charge for Ohio and instead approved a supplemental charge to be given to juries deadlocked on the question of conviction or acquittal. The *Howard* charge is not an absolute mandate for trial courts to follow, but rather a suggestion. *State v. Sanders*, 12th Dist. Butler No. CA2003-12-311, 2004-Ohio-6320, ¶ 26. If a trial court deviates from the *Howard* language, the charge must nevertheless comport with the goals of *Howard*, namely, (1) encourage a unanimous verdict only when one can conscientiously be reached, leaving open the possibility of a hung jury and resulting mistrial, and (2) call for all jurors to reevaluate their opinions, not just the jurors in the minority. *Id.*

{¶ 34} In this case, the jury deliberated for approximately 95 minutes before breaking to ask the trial court a clarifying question. The jury then resumed deliberations for an additional two hours before informing the trial court that it "might not be able to reach a verdict in this case." At that point, the trial court issued the *Howard* charge and the jury resumed its deliberations. After deliberating for another hour, the jury asked the trial court a second clarifying question. The trial court responded to the jury's question, and the jury continued its deliberations for approximately four more hours before it rendered a verdict.

{¶ 35} On appeal, Rowland argues the *Howard* charge was coercive because the jury ultimately reached a unanimous verdict when it was unable to do so before the charge was given. This court has previously rejected similar arguments, as the Ohio Supreme Court has upheld the use of a *Howard* charge on several occasions, and has specifically found that such an instruction is not coercive. *State v. Barton*, 12th Dist. Warren No.

- 9 -

CA2005-03-056, 2007-Ohio-1099, ¶ 138, citing *State v. Brown*, 100 Ohio St. 3d 51, 2003-Ohio-5059, ¶ 38. Moreover, the *Howard* charge is intended to be issued to a jury that believes it is deadlocked in order to "challenge them to try one last time to reach a consensus." *State v. Robb*, 88 Ohio St.3d 59, 81, 2000-Ohio-275. The charge is carefully drafted to avoid suggesting what verdict would be preferable. *State v. Spradlin*, 12th Dist. Clermont No. CA2016-05-026, 2017-Ohio-630, ¶ 79.

{¶ 36} There is no indication in the record that Rowland raised any objection to the trial court's decision to issue a *Howard* charge to the jury and, therefore, he has waived all but plain error. After review, we find the trial court did not commit any error in issuing this charge to the jury, plain or otherwise. Rather, we find that the *Howard* charge issued by the trial court is balanced and neutral, and that it comports with the goals of *Howard*. The trial court encouraged the jurors to reach a unanimous verdict and left open the possibility that such a verdict might not be reached. The court did not single out the jurors in the minority, but rather asked all jurors to consult with each other. The court did not instruct the jury to reach a verdict at any cost. Instead, the court stressed the importance and desirability of reaching a verdict. Aside from Rowland's speculation that the verdicts were reached as "a compromise," or by coercion, there is no evidence in the record that the jury's deliberation was prolonged or compromised in any way. Although the jurors deliberated for a lengthy period of time, they never advised the court, after their initial deadlock, that they were unable to reach a verdict. Under these circumstances, the trial court did not err in issuing a *Howard* charge to the jury.

{¶ 37} Rowland also argues that the jury's "inconsistent verdicts" should be set aside, as no reasonable jury could have concluded that Rowland was guilty of ten counts of the indictment and not guilty on the remaining seven. However, the fact that the jury returned inconsistent verdicts does not require that those verdicts be set aside. It is well

established that "inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Davis*, 12th Dist. Butler No. CA2010-06-143, 2011-Ohio-2207, ¶ 37, citing *State v. Brown*, 12 Ohio St.3d 147, 149 (1984). "Each count in an indictment charges a distinct offense and is independent of all other counts; a jury's decision as to one count is independent of and unaffected by the jury's finding on another count." *Id.*, citing *State v. Cope*, 12th Dist. Butler No. CA2009-11-285, 2010-Ohio-6430, ¶69. Thus, a conviction on one or more counts of an indictment will generally be upheld irrespective of its rational incompatibility with an acquittal on other separate counts. *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, ¶15 (10th Dist.). Consequently, merely because the jury decided to convict Rowland of some of the charges, and to acquit on others, does not mandate a reversal.

{¶ 38} Rowland's second assignment of error is overruled.

{¶ 39} Assignment of Error No. 3:

{¶ 40} THE TRIAL COURT ERRED BY PERMITTING THE STATE TO PRESENT REBUTTAL TESTIMONY FROM THE DETECTIVE WHEN THE STATE HAD DECLINED ITS OPPORTUNITY TO CROSS-EXAMINE THE DEFENDANT ON THE VERY ISSUE IN WHICH THE STATE SOUGHT TO IMPEACH THE DEFENDANT.

{¶ 41} In his third assignment of error, Rowland argues that the trial court committed plain error by allowing the state to present a rebuttal witness to contradict Rowland's testimony rather than cross-examining Rowland on the issue. Rowland also argues that his Fifth Amendment right to remain silent was violated when the state attempted to impeach Rowland with evidence that he declined to answer a question in his post-arrest interview.

{¶ 42} At trial, Rowland testified on his own behalf. On direct examination, Rowland testified that the victims were lying and that he never behaved inappropriately with his

granddaughters. The state did not cross-examine Rowland. Instead, the state called Detective Behymer as a rebuttal witness. During his testimony, Detective Behymer indicated that after Rowland's arrest, he and another detective interviewed Rowland and that Rowland would not answer when the detectives asked if A.R. was lying. Defense counsel did not object to the questioning.

{¶ 43} We conclude that Detective Behymer's statement concerning Rowland's refusal to answer his question does not rise to the level of plain error. First, we decline to consider Rowland's decision not to answer the detectives' question as a "statement." Rather, such an act merely establishes that Rowland, when given the opportunity in his interview, did not claim A.R. was lying. The state did not emphasize Rowland's refusal to respond to the detectives' question by commenting upon it during opening or closing arguments. The record also reflects that there was additional evidence in the record to contradict Rowland's statements on direct examination that A.R. was lying. Specifically, A.R. participated in a recorded controlled call with Rowland, which was facilitated by Detective Behymer. The recording of the controlled call was played for the jury during A.R.'s testimony and admitted into evidence.

{¶ 44} During the call, A.R. confronted Rowland about touching B.R. Rowland denied B.R.'s accusations, to which A.R. responded that she thought he was lying, considering what he had done to her for "all those years." Rowland simply responded that he could not help that. Later in the call, A.R. told Rowland that she was dying inside and that she could not live with "this" anymore. Rowland assured A.R. that she could. A.R. then asked Rowland, "Why me, why did you touch me and hurt me all of those years? Is it because I was there, because I was innocent? I mean why me?" Rowland responded, "I guess, yeah." At that point, Rowland asked A.R. if she was recording the call or if anyone was listening. A.R. assured Rowland no one was listening, and continued to ask, "Why

me?" Rowland ultimately responded, "I don't know, we talked about this. * * * I don't know why. I swear I don't know why. I can't tell you why. It's killing me." At the conclusion of the call, A.R. told Rowland that he really hurt her, and Rowland responded that he was "sorry."

{¶ 45} Due to Rowland's statements during the controlled call, we find he cannot show he was prejudiced by Detective Behymer's testimony. That is, we find the outcome of the trial would not have been different had Detective Behymer not commented on Rowland's refusal to answer whether A.R. was a liar, as he made incriminating statements during the call with A.R., and did not accuse A.R. of lying.

{¶ 46} We similarly reject Rowland's argument that Detective Behymer's testimony regarding Rowland's post-arrest silence violated *Doyle v. Ohio*, 426 U.S. 610 (1976). In *Doyle*, the United States Supreme Court held that "the prosecutor's use of the defendant's post-arrest, post-*Miranda* silence for impeachment purposes violated the Due Process Clause of the Fourteenth Amendment" because it was fundamentally unfair to implicitly assure a suspect that his silence will not be used against him and then use his silence to impeach an explanation subsequently offered at trial. *Doyle* at 619. Thus, *Doyle* prohibits the use for impeachment purposes of a defendant's post-arrest, post-*Miranda* silence. *Id.*, see also *State v. Heinrich*, 12th Dist. Butler No. CA90-09-201, 1991 Ohio App. LEXIS 1905, *5 (Apr. 29, 1991).

{¶ 47} However, "in the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a [s]tate to permit cross-examination as to post-arrest silence when a defendant chooses to take the stand." *Heinrich* at *4-5, citing *Fletcher v. Weir*, 455 U.S. 603, 607 (1982). Similar to the circumstances in *Fletcher*, the record in this case does not indicate that Rowland was given *Miranda* warnings prior to the interview in which he refused to answer the detectives' question about whether A.R. was lying in her allegations. Because the record does not

indicate that Rowland's silence was post-*Miranda*, Detective Behymer's testimony did not violate the rule set forth in *Doyle*.

{¶ 48} Accordingly, Rowland's third assignment of error is overruled.

{¶ 49} Assignment of Error No. 4:

{¶ 50} THE TRIAL COURT ERRED BY ADMITTING HEARSAY TESTIMONY REGARDING WHETHER DEFENDANT'S WIFE HAD EVER SEEN THE SEX THE SEX (sic) APPARATUS.

{¶ 51} Rowland also argues the trial court erred by permitting Detective Behymer to testify about statements made by Rowland's wife, Patsy, regarding a certain sex apparatus. Rowland claims that because Patsy's statements were made out of court, the detective's testimony was hearsay and should have been stricken from the record.

{¶ 52} During the direct examination of Detective Behymer, the detective testified that during his investigation, he obtained and executed a search warrant for Rowland's home. Detective Behymer further indicated that in her interview, A.R. stated Rowland used a certain sex toy on her, which she described as being located in Rowland's nightstand. During the search of Rowland's home, the detective located and searched the nightstand in order to corroborate A.R.'s statement. According to Behymer, he located a sex toy in back of the nightstand's drawer that matched A.R.'s description. Behymer indicated the location of the sex toy was such that you could not see it by simply opening the nightstand's drawer. Rather, you had to reach into the drawer to locate it.

{¶ 53} On cross-examination of Detective Behymer, defense counsel asked whether the detective considered having the sex toy tested for DNA. In response, the detective stated,

> I did, however I spoke with Patsy. Patsy was on the scene that
> night that I was at the home and I showed it to her and I asked
> her about it and she said she had never seen that before. She

- 14 -

had no recollection. She saw the silver one, but she had idea where the other one came from. So, at that point, with [A.R.'s] disclosure, and Patsy not knowing anything about that particular item, I decided not to do that.

{¶ 54} Rowland argues on appeal that the detective's testimony should have been stricken because it was hearsay. As an initial note, defense counsel did not object to Detective Behymer's testimony, and therefore, Rowland has waived all but plain error.

{¶ 55} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Where an out-of-court statement is offered without reference to its truth, it is not hearsay. *State v. Lewis*, 22 Ohio St.2d 125, 132-133 (1970). Consequently, "statements which are offered to explain a police officer's conduct while investigating a crime are * * * not hearsay," as the statements are not offered for their truth. *State v. Echavarria*, 12th Dist. Butler No. CA2003-11-300, 2004-Ohio-7044, ¶ 9, citing *State v. Price*, 80 Ohio App.3d 108, 110 (9th Dist.1992).

{¶ 56} Here, Detective Behymer's statement was not offered for its truth. That is, the statement was not offered to prove that Patsy had never seen the sex toy. Rather, the statement was offered to explain the detective's decision not to test the sex toy for DNA and counter the defense's attempt to impugn the police investigation. Therefore, the statement was not hearsay prohibited by Evid.R. 801(C), and the trial court did not err in permitting the testimony. As a result, Rowland's fourth assignment of error is overruled.

{¶ 57} Assignment of Error No. 5:

{¶ 58} THE APPELLANT'S PRISON SENTENCE IS EXCESSIVE AND CONSTITUTES CRUEL AND UNSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT OT (sic) THE UNITES (sic) STATES CONSTITUTION AND SECTION 9, ARTICLE I, OF THE OHIO CONSTITUTION.

{¶ 59} In his remaining assignment of error Rowland argues that his life sentence for Count 1 must be set aside because, as he argued in his first assignment of error, the state failed to prove the element of penetration. Rowland further argues that the individual sentences he received are grossly disproportionate to their respective offenses and that the aggregate prison term resulting from the consecutive imposition of these sentences constitutes cruel and unusual punishment.

{¶ 60} The trial court sentenced Rowland to life in prison without possibility of parole for 10 years on Count 1, rape of a victim less than 13 years of age; 36 months in prison on Count 2, gross sexual imposition; 6 years in prison for each of the remaining seven rape counts; and 48 months in prison on Count 14, gross sexual imposition. The trial court ordered that all counts were to be served consecutively, except Count 2, which was to be served concurrently to all other charges. In total, the trial court sentenced Rowland to an aggregate prison term of 56 years to life.

{¶ 61} We find Rowland's argument to be unpersuasive. As discussed under the first assignment of error, there was sufficient evidence presented to support Rowland's conviction for rape in Count 1 and therefore, his sentence should not be set aside based upon insufficient evidence. Furthermore, Rowland's proportionality argument fails with respect to his cumulative 56-year sentence because proportionality review in the context of cruel and unusual punishment does not apply to aggregate sentences. "[F]or purposes of the Eighth Amendment and Section 9, Article I of the Ohio Constitution, proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively. Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, ¶ 20.

{¶ 62} We also reject Rowland's proportionality argument as it relates to the individual sentences he received. It is generally accepted that the punishments which are prohibited by the Eighth Amendment are "limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." *State v. Blanton*, 12th Dist. Butler No. CA2008-09-235, 2009-Ohio-3311, ¶ 28, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964).

{¶ 63} For Count 1, it is well settled that there is no constitutional violation when a person is convicted and sentenced to life imprisonment for a violation of R.C. 2907.02(B) because the penalty is proportional to the act. *State v. Sholler*, 12th Dist. Clinton No. CA96-08-013, 1997 Ohio App. LEXIS 1693, *2 (Apr. 28, 1997); *State v. Accorinti*, 12th Dist. Butler Nos. CA2012-010-205 and CA2012-11-221, 2013-Ohio-4429, ¶ 22. The remaining sentences imposed were also within the authorized range and the trial court elected not to impose maximum sentences for those charges. "[A] sentence within statutory limitations is not excessive and does not violate the constitutional prohibition against cruel and unusual punishment." *State v. Bosman*, 12th Dist. Butler No. CA2001-05-101, 2002-Ohio-22, *3.

{¶ 64} Moreover, we see nothing about Rowland's individual sentences that is "grossly disproportionate" to his corresponding crimes. Rather, as this court has observed, "the rape of a child 'is shocking, outrageous, abominable, and it has enduring effects on the child,' and therefore, a 'penalty equivalent to its enormity' is required." *Accorinti* at ¶ 22, quoting *State v. Gregory*, 8 Ohio App.3d 184, 185-186 (1st Dist.1982). Although Rowland did not have a prior criminal record, he was convicted of repeatedly sexually abusing and raping his granddaughters over the course of several years. Rowland betrayed his family's trust, and took advantage of his familial relationship with the victims to facilitate the offenses. As such, we find that the individual sentences do not shock the conscience, and do not

constitute cruel and unusual punishment under the Eighth Amendment. Accordingly, Rowland's final assignment of error is overruled.

{¶ 65} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.