[Cite as *State v. Lemmings*, 2021-Ohio-3285.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-01-001 |
| | : | O P I N I O N |
| - vs - | | 9/20/2021 |
| | : | |
| JUSTIN R. LEMMINGS, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 19500101

Andrew T. McCoy, Clinton County Prosecuting Attorney, and Katie Wilkin, for appellee.

The Law Office of John D. Hill, LLC, and John D. Hill, Jr., for appellant.


**HENDRICKSON, J.**

{¶1} Appellant, Justin R. Lemmings, appeals from the sentence imposed by the Clinton County Court of Common Pleas following his guilty plea to four counts of felonious assault. For the reasons set forth below, we affirm appellant's sentence.

{¶2} On May 28, 2019, appellant, then 18 years old, was released from electronic monitoring imposed pursuant to a juvenile court dispositional order. Appellant then spent the afternoon drinking alcohol. Despite being under the influence, appellant drove a 2002

Chevrolet Impala through Wilmington, Clinton County, Ohio. Four of appellant's friends rode along in the vehicle with appellant.

{¶3} Appellant briefly parked at a Kroger grocery store, where an altercation occurred between appellant, one of his passengers, and another individual. Appellant flew into a fit of rage and drove off with his passengers still in the vehicle. Appellant sped and drove recklessly, running stop signs and traffic lights in downtown Wilmington. Appellant refused pleas from his passengers to slow down, pull over, or stop his vehicle. When one of his passengers, the mother to appellant's children, reminded appellant of his children, appellant stated "Fuck you and fuck them." When another passenger asked appellant to stop the vehicle, appellant stated, "No, you bitches are dying with me."

{¶4} As appellant approached a busy intersection, a vehicle driven by Ashley Davis turned on a green light. Davis' vehicle was occupied by her three daughters, eight-year-old twins L.D. and A.D. and six-year-old K.D. Appellant ran a red light and struck Davis' vehicle so hard that the imprint of his front license plate could be seen in the frame of Davis' vehicle. An investigation into the accident revealed that appellant's vehicle had been traveling at a speed of 97 m.p.h. five seconds before it struck Davis' vehicle. Although appellant had hit his brakes, his vehicle was still traveling 62 m.p.h. at the time of the collision. Subsequent testing of appellant revealed he had a blood-alcohol level of 0.114 and THC in his system.

{¶5} Davis and her three daughters suffered serious physical injuries as a result of the accident. Davis had to be transported by air to a hospital in Dayton. She suffered a severed aorta, which required immediate heart surgery, as well as fractured vertebrae, multiple rib fractures, injury to her spleen, abdominal bleeding, a lacerated kidney, and fractures to her hands. K.D. suffered a craniotomy emergency, which required her to be transported from the local hospital to Cincinnati Children's Hospital by air care. K.D. had an epidural hematoma, which is bleeding in the brain between the membrane and the skull,

a depressed skull fracture, a fractured right orbital, an attenuated left orbital, and multiple bruises and lacerations throughout her body. K.D. had emergency surgery to have a metal plate, or a craniotomy plate, installed in her skull and had to relearn how to walk and talk. A.D. and L.D. suffered multiple bruises and lacerations about their bodies and faces. A.D. also suffered a fracture of the pelvis wing bone and adjacent muscular hematoma.

{¶6} In addition to their physical injuries, Davis and her three daughters have also experienced psychological trauma as a result of the accident. Davis, L.D., and A.D. participate in therapy. L.D. and A.D. have been seen by licensed psychologists and have been diagnosed with PTSD and separation anxiety. They also suffer with difficulty sleeping and have nightmares about the accident. L.D., in particular, struggles with memories of the accident, as she remained conscious throughout the crash and recalls the blood, injuries, and painful sounds her mother and K.D. made while awaiting help. Since the accident, K.D. has suffered from impulse control issues and an inability to manage her emotions.

Appellant was charged on a 20-count indictment consisting of 11 counts of felonious assault, six counts of aggravated vehicular assault, two counts of abduction, and one count of endangering children. On December 8, 2020, following plea negotiations, appellant pled guilty to four counts of felonious assault with a deadly weapon in violation of R.C. 2903.11(A)(2), felonies of the second degree, in exchange for the remaining counts being dismissed.

{¶7} After engaging appellant in a Crim.R. 11(C) plea colloquy, the trial court accepted appellant's guilty pleas and found that the pleas were knowingly, intelligently, and voluntarily entered. The court then heard arguments from the state and defense as to sentencing, although the court indicated it would not impose a sentence until the following week. After hearing from the state, the victims, family members of the victims, defense counsel, and appellant, the court ordered that a presentence-investigative report ("PSI") be

prepared and continued the sentencing hearing.

{¶8} On December 15, 2020, the court sentenced appellant to five-year prison terms on each of the felonious assault counts. The court ordered the prison terms be served consecutively to one another. In accordance with the Reagan Tokes Law, R.C. 2929.144, the aggregate sentence imposed was an indefinite prison term of 20 to 22.5 years.

{¶9} Appellant appealed his sentence, raising two assignments of error.

{¶10} Assignment of Error No. 1:

{¶11} THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES AGAINST [APPELLANT], AS THE STATUTORY FINDINGS UNDERPINNING THE IMPOSITION OF SUCH SENTENCES WAS UNSUPPORTED BY THE RECORD.

{¶12} In his first assignment of error, appellant argues the trial court erred by sentencing him to consecutive prison terms because the record does not support the imposition of consecutive sentences.

{¶13} This court reviews felony sentences pursuant to the standard of review set forth in R.C. 2953.08(G)(2) to determine whether the imposition of those sentences is clearly and convincingly contrary to law. *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Pursuant to that statute, an appellate court may modify or vacate a sentence only if it determines by clear and convincing evidence, that "'the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.'" *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing as set forth in R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, and sentences a defendant within the permissible statutory range. *State v. Brandenburg*, 12th Dist. Butler Nos. CA2014-10-201 and CA2014-

10-202, 2016-Ohio-4918, ¶ 9.

{¶14} Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *State v. Dillon*, 12th Dist. Madison No. CA2012-06-012, 2013-Ohio-335, ¶ 9. First, the trial court must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender. *Id.*, citing R.C. 2929.14(C)(4). Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Id.* Third, the trial court must find that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶15} "A trial court satisfies the statutory requirement of making the required findings when the record reflects that the court engaged in the required analysis and selected the appropriate statutory criteria." *State v. Setty*, 12th Dist. Clermont Nos. CA2013-06-049 and CA2013-06-050, 2014-Ohio-2340, ¶ 113. In imposing consecutive sentences, the trial court is not required to provide a word-for-word recitation of the language of the statute or articulate reasons supporting its findings. *Id.* Nevertheless, the record must reflect that the

trial court engaged in the required sentencing analysis and made the requisite findings. *Id.* The court's findings must thereafter be incorporated into its sentencing entry. *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 10.

{¶16} Appellant concedes that the necessary findings under R.C. 2929.14(C)(4) were made at his sentencing hearing and that the findings were included in his sentencing entry. However, he argues that the record does not support the imposition of consecutive sentences as "the length of his sentence was ultimately grossly disproportionate to the nature of his conduct, the need to punish him, and the danger he posed to the community at-large."

{¶17} We disagree with appellant's arguments and find that the trial court's R.C. 2929.14(C)(4) consecutive sentencing findings are supported by the record. The record reflects that appellant has a significant criminal history dating back to when he was a juvenile. The PSI revealed that appellant was first adjudicated delinquent for criminal damaging when he was 12 years old. Between the ages of 12 and 17, appellant was subsequently adjudicated delinquent for being an unruly child, disorderly conduct, underage consumption of alcohol, multiple counts of possession of marijuana, multiple assaults, vandalism, and criminal damaging. While on probation for those offenses, appellant had more than 20 probation violations, which included continuing to test positive for marijuana and benzodiazepines, cutting off his electronic monitoring bracelet, and consuming alcohol. While a juvenile, appellant participated in the Stepping Stones program, was placed at Basset House and a rehabilitation center, and also served several periods of detention at various juvenile detention centers. None of these sanctions impacted appellant's conduct. Shortly after turning 18, appellant was involved in a domestic violence incident and subsequently pled guilty to a reduced charge of disorderly conduct. He continued to abuse drugs and alcohol, including on the day of the accident that led to the felonious assault

charges.

{¶18} On the morning of May 28, 2019, appellant was released from electronic monitoring imposed as part of a juvenile court dispositional order. Mere hours later, he drank alcohol and then drove while under the influence of alcohol and marijuana. In doing so, appellant put himself, his passengers, and other members of the community at serious risk of physical harm. Appellant ignored pleas from the passengers in his vehicle to stop driving recklessly, to slow down, or stop the vehicle, telling his passengers "you bitches are dying with me" as he drove at excessive speed and ignored traffic laws. Appellant struck Davis' vehicle at 62 m.p.h. and caused significant harm to Davis and her daughters. All four victims had to be rushed from the scene by helicopter or ambulance. Both Davis and K.D. required emergency, life-saving surgeries. In addition to serious physical injuries, consisting of broken bones, internal injuries, bruises, and lacerations, the victims also suffered psychological harm as a result of appellant's actions – a harm that was exacerbated due to the young age of K.D., A.D., and L.D. The victims are in therapy, with A.D. and L.D. having been diagnosed with PTSD and separation anxiety. K.D., in turn, suffers from impulse control issues and an inability to manage her emotions.

{¶19} Despite the significant harm he caused to his victims, appellant did not appear genuinely remorseful for his actions. While in jail awaiting trial, appellant had multiple phone conversations with family and friends wherein the accident or his victims were discussed. One conversation occurred after appellant's bond hearing, wherein a relative of the victims gave the court an update on the physical health of the victims. After hearing about the conditions of the victims, appellant's response in a recorded jail call was that the victims' relative "came to court talking shit." In other recorded phone calls, appellant is heard stating that the legal trouble he faced had been "blown out of proportion" and that he can fake tears and write a remorseful letter to the judge in an effort to get a lesser sentence. Rather than

expressing genuine remorse for his actions and the harm he caused, appellant appeared proud of his actions. At one point he asks the mother of his children, "You know I'm a fucking gangster, right? I did all that shit and didn't even get a concussion." He also appeared proud of the media coverage he was receiving, asking how many articles had been written about him and the accident and laughing and joking that his mother has bought out all the newspapers.

{¶20} Additionally, while in jail awaiting trial, appellant committed more than 20 jail infractions. Appellant disrespected officers, disobeyed direct orders, fought with other inmates, abused prescription medications, threatened to extort inmates possessing contraband, attempted to bribe officers, and damaged security windows and the video visitation kiosk.

{¶21} Through his statements and actions, appellant has demonstrated a continued lack of respect for the law or for the affect his actions have on others in the community. The nature of appellant's crimes, his significant criminal history, his lack of genuine remorse, and the continued danger he poses to the public support the imposition of consecutive sentences. Accordingly, we find that the imposition of consecutive sentences is not disproportionate to the seriousness of appellant's conduct or the danger he poses to the public. Contrary to appellant's assertions, the imposition of consecutive sentences was necessary to punish appellant and to protect the public from future crime by appellant. The trial court's findings under R.C. 2929.14(C)(4) are not clearly and convincingly unsupported by the record.

{¶22} As appellant's sentence is supported by the record and is not contrary to law, we find that the trial court did not err in imposing consecutive sentences on appellant. Appellant's first assignment of error is, therefore, overruled.

{¶23} Assignment of Error No. 2:

{¶24} THE TRIAL COURT'S IMPOSITION OF TWENTY-TO-TWENTY-TWO YEAR AGGREGATE SENTENCE AGAINST JUSTIN WAS NOT SUPPORTED BY THE RECORD BEFORE IT, AND SUCH SENTENCE VIOLATED THE EIGHTH AMENDMENT'S PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT.

{¶25} In his second assignment of error, appellant again challenges his sentence, arguing that the imposed aggregate 20-to-22.5-year sentence was "effectively * * * a life sentence," was "unconscionable under the circumstances," and amounted to a violation of the Eighth Amendment to the United States Constitution. We find appellant's arguments to be without merit.

{¶26} The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The amendment applies to the states pursuant to the Fourteenth Amendment. *See State v. Accorinti*, 12th Dist. Butler Nos. CA2012-10-205 and CA2012-11-221, 2013-Ohio-4429, ¶ 20, citing *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417 (1962).

{¶27} "[P]roportionality review in the context of cruel and unusual punishment does not apply to aggregate sentences." *State v. Rowland*, 12th Dist. Warren No. CA2019-08-084, 2020-Ohio-2984, ¶ 61. "[I]t is not the aggregate term of incarceration but, rather, the individual sentences that are relevant." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, ¶ 22. Therefore, "for purposes of the Eighth Amendment and Section 9, Article I of the Ohio Constitution, proportionality review should focus on individual sentences rather than on cumulative impact of multiple sentences imposed consecutively. Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *Id.* at ¶ 20.

{¶28} Furthermore, "[i]t is generally accepted that punishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964). A sentence that falls within statutory limitations is not excessive and does not violate the constitutional prohibition against cruel and unusual punishment. *Rowland* at ¶ 63; *McDougle* at 69.

{¶29} Here, each of appellant's individual prison terms fell within the range authorized by R.C. 2929.14(A)(2)(a). As appellant was convicted of multiple second-degree felonies, the court was permitted to impose a prison term of two, three, four, five, six, seven, or eight years for each offense. The court elected to impose a term of five years for each of the four counts of felonious assault with a deadly weapon – a term that is authorized by law. Nothing about appellant's individual five-year sentences are "grossly disproportionate" to his crime. Moreover, the individual sentences are not contrary to law as the trial court considered the principles and purposes of felony sentencing and the seriousness and recidivism factors set forth in R.C. 2929.11 and 2929.12, respectively, in imposing the sentences.

{¶30} Accordingly, as the individual sentences imposed by the trial court are within the range of penalties authorized by statute, they are not grossly disproportionate or shocking to a reasonable person or to the community's sense of justice, and do not constitute cruel and unusual punishment. Appellant's aggregate indefinite prison term of 20 to 22.5 years, which resulted from the consecutive imposition of the individual sentences, does not violate the Eighth Amendment to the United States Constitution. *See Hairston* at ¶ 23. As discussed in our resolution of appellant's first assignment of error, the imposition of consecutive sentences were supported by the record and were not disproportionate to

his conduct or the danger he poses to the public.

{¶31}  Appellant's second assignment of error is, therefore, overruled.

{¶32}  Judgment affirmed.


M. POWELL, P.J., and S. POWELL, J., concur.